No. 93-622

IN THE SUPREME COURT OF THE STATE OF MONTANA

1994

IN RE THE CUSTODY OF T.M.,

A Youth in Need of Care.

APPEAL FROM: District Court of the First Judicial District,
In and for the County of Lewis and Clark,
The Honorable Thomas C. Honzel, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

J. Mayo Ashley, Attorney at Law,
Helena, Montana

For Respondent:

Hon. Joseph P. Mazurek, Attorney General,
Patricia J. Jordan, Assistant Attorney
General, Helena, Montana

Mike McGrath, Lewis and Clark County
Attorney, Carolyn Clemens, Deputy County
Attorney, Helena, Montana

FILED

OCT 04 1994

Filed:

CLERK OF SUPREME COURT
STATE OF MONTANA

Submitted on Briefs: June 2, 1994

Decided: October 4, 1994

Clerk

Justice William E. Hunt, Sr., delivered the opinion of the Court.

Appellant Robert Darell Martz appeals from an order of the First Judicial District Court, Lewis and Clark County, terminating appellant's parental rights over T.M.

Affirmed.

The sole issue on appeal is whether the District Court abused its discretion in terminating the parental rights of appellant.

T.M. was born May 5, 1989. Appellant is T.M.'s natural father. T.M.'s mother, Cindy Bruno Martz, died in an automobile accident when T.M. was 14 months old.

T.M. has been diagnosed as having fetal alcohol syndrome. As a result, he requires a structured environment and constant parental supervision.

Appellant was incarcerated in Washington State when T.M. was born, and from October 1991 through November 1992, as well as on several other occasions while T.M. was in his care.

In February 1993, appellant was convicted of driving under the influence and served five days in jail. In April 1993, he was convicted of domestic abuse and served three days in jail. Appellant was convicted of driving under the influence for the third time in April 1993. He was sentenced to one year in the county jail, with all but 30 days suspended, on the condition that he receive treatment at Galen State Hospital. Appellant attended the program but did not graduate because of rule infractions.

On or about April 7, 1993, appellant was arrested for abusing his live-in girlfriend. The Department of Family Services (DFS)

2

was informed that appellant had been driving intoxicated with T.M. in the car. Thereafter, the DFS removed T.M. from appellant and placed him in foster care.

The DFS requested family-based services to assist appellant. Appellant was assessed as needing chemical dependency treatment, parenting assistance, and family therapy.

On April 16, 1993, the DFS filed a petition for temporary investigative authority, protective services, temporary custody, and for adjudication of T.M. as a youth in need of care. At the time the petition was filed, T.M. was in foster care because appellant was incarcerated for domestic abuse.

By stipulation dated May 6, 1993, appellant agreed that T.M. was a youth in need of care and that the DFS would have temporary investigatory authority, protective services, and temporary custody of T.M. for six months. The stipulation was entered as an order of the court on March 14, 1993, and it authorized the DFS to develop a treatment plan. The plan required appellant to obtain treatment for his chemical dependency; to complete an anger management or domestic abuse program; to successfully complete a parenting class; to attain and maintain safe housing; and to remain a law abiding citizen.

On June 13, 1993, appellant was arrested for obstructing a police officer. Appellant was intoxicated at the time. He was referred to the Boyd Andrew Chemical Dependency Care Center which placed him in its intensive outpatient program. Appellant was

3

discharged from the program for failing to complete an assignment and for failing to keep an appointment with his counselor.

The DFS agreed to pay the costs for appellant's July 1993 alcohol treatment, parenting classes, and anger management classes. Appellant was dropped from each of these programs because he was arrested three times in July 1993 for alcohol related incidents.

As a result of the above facts, the State filed a petition to terminate parental rights on August 25, 1993. A hearing was held on September 23 and 27, 1993. On October 25, 1993, the District Court entered its order which provides:

> 1. [T.M.] is a youth in need of care. All parental rights of Robert Martz, the father of the youth, are hereby terminated and he shall have no further legal claims to [T.M.] or to his property.
>
> 2. [T.M.] is hereby placed in the permanent legal custody of the Montana Department of Family Services.
>
> 3. The Montana Department of Family Services is authorized to place the youth for adoption and to consent to his adoption.

The court concluded that appellant failed to comply with his treatment plan, and that the conditions that made appellant unfit as a parent were not likely to change with the passage of time.

Did the District Court abuse its discretion in terminating the parental rights of appellant?

Appellant argues that the court failed to consider all of the available information regarding appellant's efforts to become a good parent, and abused its discretion by terminating his parental rights pursuant to § 41-3-609, MCA.

4

The appropriate standard of review to be applied to purely factual findings in a proceeding to terminate parental rights is whether the findings are clearly erroneous. Matter of J.J.G. (Mont. 1994), 51 St. Rep. 793, 796; Matter of D.H. and F.H. (Mont. 1994), 51 St. Rep. 386; Interstate Production Credit Ass'n v. DeSaye (1991), 250 Mont. 320, 820 P.2d 1285. We review conclusions of law in a termination proceeding to determine whether they are correct. Matter of J.J.G. 51 St. Rep. at 796; Matter of D.H. and F.H., 51 St. Rep. at 387; In re Marriage of Burris (1993), 258 Mont. 265, 269, 852 P.2d 616, 619.

The criteria for termination of parental rights are set forth in § 41-3-609, MCA, which provides in part:

(1) The court may order a termination of the parent-child legal relationship upon a finding that any of the following circumstances exist:
. . . .
(c) the child is an adjudicated youth in need of care and both of the following exist:
(i) an appropriate treatment plan that has been approved by the court has not been complied with by the parents or has not been successful; and
(ii) the conduct or condition of the parents rendering them unfit is unlikely to change within a reasonable time; or
(d) the parent has failed to successfully complete a treatment plan approved by the court within the time periods allowed for the child to be in foster care under 41-3-410 unless it orders other permanent legal custody under 41-3-410.

T.M. was adjudicated a youth in need of care on May 6, 1993. On May 10, 1993, appellant signed his court approved treatment plan. However, appellant did not complete his chemical dependency programs at either Galen State Hospital or Boyd Andrew Chemical Dependency Care Center. Appellant did not complete his parenting

5

and anger management classes after being arrested on three separate alcohol related incidents. At the time of the District Court hearing, appellant did not have a stable home. Appellant did not remain law-abiding. He was arrested and incarcerated five times in June and July, 1993. The record clearly demonstrates that appellant did not comply with or succeed at his treatment plan.

The District Court concluded that the conduct or conditions that rendered appellant unfit as a parent were unlikely to change within a reasonable time pursuant to § 41-3-609(2) and (3), MCA, which provides in part:

> (2) In determining whether the conduct or condition of the parents is unlikely to change within a reasonable time, the court must enter a finding that continuation of the parent-child legal relationship will likely result in continued abuse or neglect or that the conduct or the condition of the parents renders the parents unfit, unable, or unwilling to give the child adequate parental care. In making such determinations, the court shall consider but is not limited to the following:
> . . . .
> (g) any reasonable efforts by protective service agencies that have been unable to rehabilitate the parent.
> (3) In considering any of the factors in subsection (2) in terminating the parent-child relationship, the court shall give primary consideration to the physical, mental, and emotional conditions and needs of the child.

The record supports the District Court's conclusion. In an effort to rehabilitate appellant, the DFS agreed to pay the cost of appellant's July 1993 treatment programs. Appellant did not complete these programs, due to his incarcerations. Pam Ponick, a licensed family services counselor, worked closely with appellant. She expressed serious concerns about appellant's ability to parent

6

and his refusal to address his chemical dependency. She determined that before he could parent T.M., appellant would need at least one year of sobriety, parent training, and therapy.

Dr. Susan Lewin, a geneticist at Shodair Hospital, diagnosed T.M. as having suffered a prenatal event that was probably fetal alcohol effect. She found that T.M. needed a stable, highly structured environment with a consistent, full-time parent. Having a parent drop out of his life for periods of time would be very damaging to T.M. Prior to being placed in foster care, T.M. had seven care takers, appellant not included. T.M. was enrolled in a preschool program for children with disabilities. His teacher, Peggy Hollow-Phelps, testified that when T.M. first arrived he had difficulties with fine motor coordination, communication, problem solving, and social interaction. By contrast, Ms. Hollow-Phelps found that T.M. made a 21-month gain in development after being placed in foster care.

Finally, the District Court was bound to give primary consideration to the physical, mental, and emotional conditions and needs of the child. Section 41-3-609(3), MCA. The best interest of the child is paramount and takes precedence over parental rights. Matter of J.J.C.H. (1992), 252 Mont. 158, 165, 827 P.2d 812, 816; In re J.W. (1988), 232 Mont. 46, 50, 757 P.2d 769, 771. It is clear from the record that T.M.'s best interest was served by terminating appellant's parental rights.

We conclude the District Court's findings are not clearly erroneous. The District Court properly applied the criteria set

7

forth in § 41-3-609, MCA, to the facts in the present case. The court concluded, and we agree, that T.M. was a youth in need of care; that appellant failed to comply with his treatment plan; and that the conditions that made appellant unfit as a parent were unlikely to change within a reasonable time.

We hold that the District Court did not abuse its discretion in terminating appellant's parental rights.

We affirm.

_____
                    Justice

We concur:

_____
        Chief Justice

_____

_____

_____
        Justices

8

October 4, 1994

## CERTIFICATE OF SERVICE

I hereby certify that the following certified order was sent by United States mail, prepaid, to the following named:

J. Mayo Ashley
Attorney at Law
222 Broadway
Helena, MT 59601

Carolyn A. Clemens, Deputy Co. Attny.
Lewis & Clark County Courthouse
228 Broadway
Helena, MT 59601

Hon. Joseph P. Mazurek, Attorney General
Patricia J. Jordan, Assistant
Justice Building
Helena, MT 59620

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _A. Gallagher_
Deputy