NO. 95-380

IN THE SUPREME COURT OF THE STATE OF MONTANA

1996

FILED

FEB 22 1996

Ed Smith
STATE OF MONTANA

IN RE A.L.K., K.L.K., and M.S.C.,

Youths in Need of Care.

APPEAL FROM:   District Court of the First Judicial District,
               In and for the County of Lewis and Clark,
               The Honorable Thomas C. Honzel, Judge presiding.


COUNSEL OF RECORD:

        For Appellants:

            Jeremy Gersovitz, Public Defender's Office,
            Helena, Montana    (for Brian Shane Casey)

            James B. Obie, Attorney at Law,
            Helena, Montana    (for Tessa Krause)

        For Respondent:

            Hon. Joseph P. Mazurek, Attorney General,
            Pamella Collins, Assistant Attorney General,
            Helena, Montana

            Mike McGrath, Lewis and Clark County Attorney,
            Carolyn A. Clemens, Deputy County Attorney,
            Helena, Montana


                    Submitted on Briefs:  January 25, 1996

                              Decided:  February 22, 1996

Filed:

                    _____
                                Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1995 Internal Operating Rules, the following decision shall not be cited as precedent and shall be published by its filing as a public document with the Clerk of the Supreme Court and by a report of its result to State Reporter Publishing Company and West Publishing Company.

On January 3, 1995, the Montana Department of Family Services (DFS) filed a petition with the District Court for the First Judicial District in Lewis and Clark County to terminate the parental rights of Tessa Krause, Dennis Mackey, and Brian Shane Casey. Following a three-day hearing, the District Court issued an order which terminated the parental rights of the three parents and transferred custody of the children and the right to consent to adoption to DFS. Tessa Krause appeals the District Court's order which terminated her parental rights to A.L.K., K.L.K., and M.S.C. Brian Shane Casey (Shane) appeals the District Court's order which terminated his parental rights to M.S.C. We affirm the order of the District Court.

There are two issues on appeal:

1. Did the District Court err when it terminated Shane's parental rights to M.S.C.?

2. Did the District Court err when it terminated Tessa's parental rights to A.L.K., K.L.K., and M.S.C.?

FACTUAL BACKGROUND

Tessa Krause is the natural mother of three children: A.L.K., born July 16, 1989; K.L.K., born March 25, 1991; and M.S.C., born May 2, 1992. Each of the children has a different father. Brian Shane Casey is the natural father of M.S.C. A.L.K.'s father was not a party to the original district court action, and K.L.K.'s father has not appealed the order of the District Court terminating his parental rights.

Tessa and Shane began living together in 1990 when Tessa was five months pregnant with K.L.K. They remained together off and on until February 26, 1995, at which time both were arrested for domestic abuse. Shane was thereafter incarcerated. He had received a ten-year suspended sentence for felony theft in Missoula County and his sentence was reinstated for the domestic abuse charges and for drug usage.

The Montana Department of Family Services became involved with the family in 1992, when A.L.K. was admitted to Shodair Children's Hospital for violent and self-abusive behavior. At the hospital, A.L.K. was diagnosed with post-traumatic stress disorder, attention deficit hyperactive disorder, and reactive attachment disorder of early childhood. His case worker determined that his emotional disturbance might be the product of a violent and chaotic home life. She recommended that Tessa have an in-home provider of parent training, further parenting classes, and individual therapy. In addition, she referred A.L.K. to Mental Health Services for continued therapy. Tessa, however, did not follow through with

3

A.L.K.'s therapy and did not attend any of the appointments made for her to assist her in dealing with A.L.K.'s problems. The Mental Health Center terminated A.L.K.'s therapy on September 28, 1994, because of nonattendance.

K.L.K. was evaluated by a clinical therapist in September and October 1994. At that time, K.L.K. was diagnosed with disruptive behavior disorder and possibly reactive attachment disorder. She manifested her emotional problems through biting, kicking, self-destructive behavior, and inappropriate sexual behavior. In addition, she was diagnosed with severe stress-related gastro-intestinal problems which were unusual for a child of her age. The therapist, who tried unsuccessfully to involve Tessa in the evaluation, determined that K.L.K.'s home environment needed to be consistent, structured, and safe. It was her opinion that if K.L.K.'s home life did not improve, she would be in danger.

K.L.K. and M.S.C. attended the Children's Center from January 1995 through March 1995. The children, however, had difficulty adjusting to the program. Their behavior included kicking, hitting, spitting, biting, and a general failure to sit still. In addition, K.L.K. was disruptive during nap time and displayed sexually inappropriate behavior. Because of K.L.K.'s aggressive behavior, the center hired an aide to work exclusively with her. Even with the help of the aide, however, the center determined that K.L.K.'s and M.S.C.'s needs were beyond the services it could offer. In March 1995, the center terminated the children from its program. A.L.K., who attended both the Children's Center and the

4

pre-kindergarten at Rossiter Elementary School, continued to have severe behavioral problems.

Between July 1993 and March 1995, the three children were in foster care for a combined total of almost thirteen months. On December 30, 1992, A.L.K. and K.L.K. were adjudged to be youths in need of care. On May 10, 1993, M.S.C. was adjudged to be a youth in need of care. On that date, the District Court granted DFS temporary investigative authority, protective services, and temporary custody of the children. Tessa entered into a court-approved treatment plan on December 30, 1992; the District Court approved a treatment plan for Shane on August 24, 1993.

In May 1994, DFS determined that both Tessa and Shane had successfully completed Phase I of their court-approved treatment plans and instituted Phase II. Phase II of Tessa's treatment plan required that she: (1) continue therapy and make arrangements for A.L.K. and K.L.K. to receive therapy through Mental Health Services; (2) receive chemical dependency counseling and maintain a drug-free lifestyle; (3) participate in parent training classes; (4) demonstrate that she could continue to live a lifestyle conducive to her health and welfare and her children's health and welfare; (5) maintain suitable housing; and (6) demonstrate that she was economically and personally capable of adequately satisfying her own and her three children's basic needs. Phase II of Shane's treatment plan listed six similar objectives, but was limited to his parental responsibilities to M.S.C.

5

As of December 1994, DFS determined that both Shane and Tessa had failed to accomplish Phase II of their respective treatment plans. Although DFS recognized that Tessa had partially completed all six of her objectives, the agency determined that Tessa had failed to complete various tasks set forth in her treatment plan. In particular, Tessa did not follow through with counseling for A.L.K. and K.L.K., did not participate in chemical dependency treatment, did not maintain a drug-free lifestyle, did not complete the parent training program, and was involved in domestic violence with Shane such that the three children were removed from the home. DFS determined that although Shane had partially completed three of his objectives, he had completely failed to achieve the other three. In particular, Shane did not attend therapy, did not attend parent training classes, failed two urinalysis drug tests, was found to be in possession of drug paraphernalia, and was involved in domestic violence with Tessa.

Both Tessa's and Shane's treatment plans listed a contingency that if either failed to accomplish the terms of the plans, DFS could petition for termination of parental rights and request the right to consent to the adoption of the youths. Based on its conclusion that Tessa and Shane had failed to follow through with their respective treatment plans, DFS petitioned the First Judicial District Court for termination of parental rights on January 3, 1995.

On May 2, 1995, following a termination hearing, the District Court entered an order in which it terminated the parental rights

of Tessa and Shane. The court found that Tessa and Shane had failed to successfully complete their court-ordered treatment plans, and found that it was highly unlikely that the conduct or condition of either Tessa or Shane--which rendered each unfit, unable, or unwilling to give the children adequate parental care-- would change within the foreseeable future. The court awarded DFS permanent legal custody of K.L.K. and M.S.C., and legal custody of A.L.K. until the parental rights of his father had been terminated.

ISSUE 1

Did the District Court err when it terminated Shane's parental rights to M.S.C.?

The standard of review for a district court's termination of parental rights is whether the court's findings of fact are clearly erroneous and whether its conclusions of law are correct. In re *J.S. and P.S.* (1994), 269 Mont. 170, 173, 887 P.2d 719, 720.

The criteria the district court must consider when it terminates an individual's parental rights are set forth in § 41-3-609, MCA. That statute provides, in part:

> (1) The court may order a termination of the parent-child legal relationship upon a finding that any of the following circumstances exist:
> . .
> (c) the child is an adjudicated youth in need of care and both of the following exist:
> (i) an appropriate treatment plan that has been approved by the court has not been complied with by the parents or has not been successful; and
> (ii) the conduct or condition of the parents rendering them unfit is unlikely to change within a reasonable time; or
> (d) the parent has failed to successfully complete a treatment plan approved by the court within the time

7

> periods allowed for the child to be in foster care under 41-3-410 unless it orders other permanent legal custody under 41-3-410.

Section 41-3-410(1), MCA, provides that the court may terminate parental rights where the child has been in an out-of-home placement for a cumulative total of at least one year and the parent has substantially neglected or willfully refused to remedy the circumstances that cause the child to be in such placement.

In this case, the District Court adjudged M.S.C. to be a youth in need of care on May 10, 1993. On May 2, 1995, the court found that M.S.C. had been in out-of-home placement for a cumulative period of more than one year, that Shane had failed to comply with his court-approved treatment plan, and that it was highly unlikely that the conduct or condition that rendered Shane an unfit parent would change within a reasonable time. Therefore, pursuant to § 41-3-609, MCA, the District Court ordered that Shane's parental rights to M.S.C. be terminated.

On appeal, Shane contends that the District Court's findings of fact are clearly erroneous because they are not supported by substantial evidence regarding the likelihood that the conduct or condition that rendered Shane unfit to parent would change within a reasonable time. Shane further contends that the District Court did not adequately sort out the correlation between the behavioral problems of the individual children and the responsibility of each child's parents. In particular, Shane maintains that the District Court did not examine the evidence with respect to Shane alone, that there is no evidence that the two older children's severe

8

emotional problems were caused by him, and that M.S.C. is a "normal" child.

The record is clear, however, that the District court adequately sorted out Shane's parental responsibilities and liabilities with respect to M.S.C. before it entered its order. In its findings of fact, the court noted that Shane had failed to complete his mental health counseling, had failed to comply with his chemical dependency treatment program, and had failed to follow through with his parenting classes. In addition, the court found that Shane had an ongoing drug problem and had admitted to being involved in the sale of marijuana and methamphetamines. The court noted that Shane's drug abuse and his domestic abuse of Tessa had contributed to the revocation of his earlier suspended sentence such that, as of the time of the district court hearing, he would not have been eligible for parole for six or seven months.

In making its finding that Shane's conduct was unlikely to change within a reasonable time, the District Court clearly addressed the factors set forth in § 41-3-609(2), MCA. Those factors include:

> (b) a history of violent behavior by the parent;
> . . . .
> (d) excessive use of intoxicating liquor or of a narcotic or dangerous drug that affects the parent's ability to care and provide for the child;
> (e) present judicially ordered long-term confinement of the parent;
> . . . .
> (g) any reasonable efforts by protective service agencies that have been unable to rehabilitate the parent.

9

In addition, the court complied with its duty to give priority to the best interests of the child over the parent's rights. Section 41-3-609(3), MCA; *In re T.M.* (1994), 267 Mont. 75, 79, 881 P.2d 1333, 1336. Although Shane asserts that M.S.C. is "normal," we note that the child had spent almost half of his three years in a foster home **as of** the **time** of the district court hearing. In addition, testimony at the hearing revealed that M.S.C. had already developed behavioral problems, such as biting and hitting, and that M.S.C. was at risk of becoming seriously emotionally disturbed due to his exposure to domestic violence and a chaotic environment. Based on these facts and on the court's determination that M.S.C. needed permanency and predictability in his life, the District Court concluded that continuation of Shane's and M.S.C.'s legal relationship was not in the best interests of M.S.C.

We hold that the District Court's order which terminated Shane's parental rights to M.S.C. was supported by substantial credible evidence and was not clearly erroneous. Based on the evidence that Shane had failed to complete both counseling and chemical dependency treatment, had failed to follow through with his parenting classes, had continued to use and sell drugs, and had continued to abuse Tessa and to expose M.S.C. to that abuse, we hold that the District Court was correct in terminating Shane's parental rights to M.S.C.

ISSUE 2

Did the District Court err when it terminated Tessa's parental rights to A.L.K., K.L.K., and M.S.C.?

10

The District Court terminated Tessa's parental rights pursuant to § 41-3-609, MCA, on the basis of its findings that Tessa had failed to successfully complete her court-ordered treatment plan, that the conduct or condition which rendered Tessa an unfit parent would not change in the foreseeable future, and that continuation of the parent/child legal relationship would not be in the children's best interests.

On appeal, Tessa maintains that the District Court erroneously disregarded testimony at the hearing regarding the bond between Tessa and her three children and the detrimental effect termination of that bond would have on the children. In addition, Tessa maintains that the court failed to consider the reasonable efforts she had made at rehabilitation when it ordered termination of her parental rights.

In its finding of fact, however, the court recognized Tessa's counselor's testimony that "the children are bonded with Tessa and that future contact with her is needed." The court further noted, however, that although that counselor testified that it would not be in the best interests of the children to terminate Tessa's parental rights, she also testified that she would not recommend returning the children to Tessa until Tessa was in a position to parent, a process which would take two to three years. The District Court was also faced with testimony that Tessa had failed to obtain the necessary counseling for her children, had failed to cooperate with teachers and other authorities who attempted to help her children, had failed to follow through with parenting classes,

11

had continued to sell and use drugs, and had continued to maintain an abusive relationship.  In light of this evidence, and in light of the testimony of DFS social worker Joe Baumgardner, who testified that the children had become progressively more disturbed throughout the two years he had worked with them, the court was clearly not in error when it concluded that:

> Continuation of the parent/child legal relationship is not in the best interests of any of the children. They have been in limbo far too long and something must be done now to establish some permanency and predictability in their lives.  They simply cannot wait any longer.

Furthermore, although it is arguable that Tessa had had some success at counseling, the record is clear that she had a long way to go--perhaps as long as two or three years--before she could adequately parent her three children.  Although this Court recognizes that evidence of rehabilitation is a factor which should be considered, it is well-established that the best interests of the children are paramount and take priority over parental rights and familial bonds.  *In re C.A.R. and P.J.R.* (1984), 214 Mont. 174, 182, 187, 693 P.2d 1214, 1219, 1221.  In this case, over three years of intervention by DFS had failed to spur adequate change in Tessa's lifestyle or parenting skills.  In addition, testimony was clear that A.L.K. and K.L.K. were in need of immediate treatment, and that M.S.C. was in danger of becoming severely emotionally disturbed if he continued to live in a violent and chaotic environment.  The evidence therefore supports the District Court's conclusion that the children's needs for stability and permanency

12

warranted termination of Tessa's parental rights. As we stated in *In re C.A.R. and P.J.R.*, 214 Mont. at 186, 693 P.2d at 1221:

> Stability is a very important factor in a child's development, and a child should not be subjected to constantly changing temporary foster care situations while waiting for their [sic] mother to possibly improve her parenting skills.

We therefore hold that the District Court's findings of fact regarding the termination of Tessa's parental rights were not clearly erroneous, and that its conclusion that Tessa's parental rights should be terminated was correct. Accordingly, we affirm the District Court's order which terminated Tessa's parental rights to A.L.K., K.L.K., and M.S.C.

_____
Justice

We concur:

_____
Chief Justice

_____

_____
Justices

13