No. 97-356

IN THE SUPREME COURT OF THE STATE OF MONTANA

1997


GLACIER PARK COMPANY,
a Delaware corporation,

Plaintiff and Respondent,

v.

MOUNTAIN, INC., a
Tennessee corporation,

Defendant and Appellant.


APPEAL FROM:   District Court of the Fourteenth Judicial District,
In and for the County of Musselshell,
The Honorable Roy C. Rodeghiero, Judge presiding.


COUNSEL OF RECORD:

For Appellant:

George T. Radovich, Attorney at Law, Billings, Montana

For Respondent:

Jeanne Matthews Bender; Holland & Hart, Billings, Montana


Submitted on Briefs: October 9, 1997

Decided:    November 18, 1997

Filed:


_____
Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

Mountain, Inc., (Mountain) appeals from the decision of the Fourteenth Judicial District Court, Musselshell County, granting Glacier Park Company's (Glacier's) motion for summary judgment. At the District Court, Mountain asserted that Glacier's motion should not be granted because genuine issues of material fact had not been resolved. Additionally, Mountain sought equitable relief, claiming it paid an exorbitant amount of money toward a coal lease with Glacier and made what it believes were diligent efforts to comply with the provisions of the coal lease. The District Court denied equitable relief finding that Mountain had not complied with õ 28-1-104, MCA, which allows relief from forfeiture. The court also granted Glacier's motion for summary judgment concluding that there were no genuine issues of material fact and that Glacier was entitled to judgment as a matter of law. We affirm.

## Background

Glacier owns a coal estate and other real property in the Bull Mountains near Roundup, Montana. In 1995, Mountain contracted with Glacier to assume the operation of a coal mine located on that property. Mountain executed the relevant documents, including a coal lease and a promissory note. During the course of the transactions, Mountain was represented by counsel and by its president, John Paul Baugues, Jr., an experienced coal mine operator.

The coal lease provided for advance minimum royalty payments. The first payment of $600,000 was paid by Mountain at the time of contracting and covered its royalty obligations through July 1, 1996. The coal lease also provided that, beginning July 1, 1996, Mountain would pay additional royalty payments of $150,000 on the first day of each calendar quarter. The amount of the royalty payments was to gradually increase over the course of the ten-year lease. In addition, the promissory note required Mountain to make five interest payments and pay the entire $273,000 of principal with accrued interest on February 17, 1996.

Shortly after Mountain leased the interest in the coal estate, but before Mountain began operations, a fire destroyed the coal treatment plant. The record is unclear about who received the insurance proceeds, but Mountain asserts that it did not receive any money as a result of the fire. Mountain contends that it was forced to rebuild the plant at its own expense before it could begin operations. The plant was completed sometime during the winter of 1995-96; however, Mountain claims it was still unable to operate due to extraordinary weather delays resulting from excessive snowfall. As a result of these unexpected delays, Mountain was unable to meet its February 17, 1996 payment obligation under the note.

Pursuant to Section 24.7 of the coal lease, Glacier served Mountain with a Notice of Default on February 22, 1996. That section provides:

> Notwithstanding anything contained in this Lease to the contrary, if Lessee shall fail to pay, when due, any payment of principal or interest due under that certain Promissory Note dated August 17, 1995, from Lessee, as Maker, to Lessor, as Lender, and such failure shall continue for a period of ten (10) days after Lessor shall have given written notice of such default to Lessee, then this Lease and the leasehold estate created hereby shall automatically terminate and Lessor shall hold and possess the Premises free and clear of all claims of Lessee therein. [Emphasis added.]

Mountain failed to cure the default within the time allowed. After the ten-day grace period prescribed by Section 24.7 had expired, Mountain attempted to make a partial payment on the note. The check tendered by Mountain was written on a closed account; the bank refused to honor the check.

Between Mountain's February default on the note and July of 1996 (when the first royalty payment was due), Mountain attempted to negotiate alternative payment plans with Glacier. Glacier was accommodating, but Mountain still could not meet its payment obligations. On July 23, 1996, Glacier served Mountain with a three-day Notice to Quit maintaining that the lease was terminated pursuant to Section 24.7 of the coal lease and asserting its right to possession of the property. Mountain disregarded the notice and continued its mining operations. Glacier then filed an action for unlawful detainer in District Court seeking to regain possession of the coal estate and damages for Mountain's wrongful occupation of the property. On January 10, 1997, Mountain made one final attempt to satisfy its obligations under the coal lease by tendering a check for $733,000 which it claimed was its "best estimate" of the amount due. Glacier rejected the check, again asserting that the coal lease had terminated under Section 24.7. Glacier deposited the check with the District Court pending the outcome of the case. The District Court entered summary judgment in favor of Glacier, and ordered Mountain to immediately vacate the premises and pay Glacier treble damages of $1,200,000 pursuant to õ 70-27-205(2), MCA. Mountain appealed the decision of the District Court.

### Issues Presented

1. Did the District Court err in granting summary judgment?
2. Did the District Court err in denying Mountain's request for equitable relief under õ 28-1-104, MCA?

### Discussion

#### I.

We review a district court's grant of summary judgment de novo and apply the same criteria as the district court pursuant to Rule 56, M.R.Civ.P. Singleton v. L. P. Anderson Supply Co., Inc. (Mont. 1997), 943 P.2d 968, 54 St.Rep. 738, 739. Rule 56,

M.R.Civ.P., allows the court to grant summary judgment when it finds there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. The initial burden of showing the absence of any genuine issue of material fact falls on the moving party. Singleton, 943 P.2d at 970. If the moving party satisfies its burden, the burden shifts to the party opposing the motion to establish the existence of a genuine issue of material fact. Singleton, 943 P.2d at 970. Glacier, as the moving party, had the initial burden of showing that no genuine issue of material fact existed.

Glacier asserts that the uncontested facts show that Mountain was guilty of unlawful detainer as a matter of law. The law providing landowners relief from unlawful detainer is codified in õ 70-27-108(3), MCA, as follows:

A tenant of real property or mining claim, for a term less than life, is guilty of unlawful detainer:

. . .

(3) when he continues in possession, . . . after a neglect or failure to perform other conditions or covenants of the lease or agreement under which the property is held . . . than the one for the payment of rent, and 3 days' notice in writing, requiring the performance of such conditions or covenants or the possession of the property, shall have been served upon him . . . . Within 3 days after the serving of the notice, the tenant . . . may perform the conditions or covenants of the lease . . . and thereby save the lease from forfeiture. If the covenants and conditions of the lease violated by the lessee cannot afterward be performed, then no notice, as last prescribed herein need be given to said lessee . . . .

In this appeal, Mountain asserts that "numerous . . . factual questions [exist] . . . to preclude summary judgment." What Mountain fails to assert, however, are genuine issues of material fact. Mountain concedes that under the coal lease, it was a tenant of real property for a term of ten years. Furthermore, Mountain does not dispute that it failed to make payment under the note as required. Mountain does, however, contend that it received insufficient notice under the unlawful detainer statute. In support of this contention, Mountain asserts that the statute requires that the notice provide the tenant with the option of either paying the rent or vacating the premises within three days. Mountain maintains that the notice from Glacier demanded only that Mountain vacate the premises and did not give Mountain the option of paying rent. Mountain claims that the failure of the notice to contain language giving them an option to pay rent should

have
prevented summary judgment.

Section 70-27-108, MCA, states that the notice of unlawful detainer must require performance of the conditions or covenants or possession of the property. However, it goes on to provide that "if the covenants or conditions of the lease violated by lessee cannot be performed, then no notice as last prescribed herein need be given to said lessee." Section 70-27-108(3), MCA. Glacier contends that Mountain's default (failure to make payment after notice of default and expiration of the grace period) resulted in automatic termination of the lease under Section 24.7. As of March 4, 1996 (ten days after receiving the February 22, 1996 notice of default), when the contractual grace period expired, the lease, by its own terms, automatically terminated and Mountain no longer had the ability to perform. The unlawful detainer statute, õ 70-27-108, MCA, which Glacier invoked some four months later, did not require that Glacier grant Mountain further time to cure the default. The statutory three-day period for performance of conditions only applies to situations where the defaulting party is still in a position to perform; it does not pertain to situations where the defaulting party has already been given notice of default and has failed to cure the default within the specified grace period. Under such circumstances, performance is no longer possible and õ 70-27-108(3) merely requires that the defaulting party be given notice of demand to vacate the property. Glacier's notice to vacate complied with the statute and was consistent with its position that the lease had terminated.

Mountain also asserts that the notice was deficient because it did not contain a reference to the amount due. Mountain makes that assertion based on the language of õ 70-27-108(2), MCA. However, as we explained in Rasmussen v. Lee (1996), 276 Mont. 84, 91-92, 916 P.2d 98, 103:

Section 70-27-108, MCA, provides three situations where a tenant can be found liable for unlawful detainer. Subsection (1) provides for continued possession "after the expiration of the term for which it is let to him without permission of the landlord." Subsection (2) provides for continued possession "after default in the payment of rent." Subsection (3) provides for continued possession "after a neglect or failure to perform other conditions or covenants of the lease."

The amount owing in this case was not rent. Rather, it was due to a failure to make payments on the promissory note. Therefore, subsection (2) does not apply to such a payment. Instead, subsection (3) pertaining to failure to perform conditions or covenants other than rental payments applies. That section does not require the notice to reference an amount due. Moreover, as stated above, the lease had terminated as of the time Mountain received notice to vacate; therefore, Mountain could no longer cure the

default by paying the note. At that point in time, the amount due was irrelevant. Therefore, no genuine issue of material fact exists regarding the sufficiency of the notice.

Finally, Mountain argues that when Glacier rejected its check tendered January 10, 1997 for $733,000 it should have given notice of why it was rejecting the check and how Mountain could cure the defect. Since Glacier contended that the lease had terminated, it did not give notice of how to cure the defect. The check was defective simply because it was too late. Mountain's belated attempt to cure its default was nearly one year after the payment was due and about one month before the summary judgment hearing on its unlawful detainer. At that juncture, Glacier had opted to cease dealing with Mountain, it simply wanted its property back.

Based on the statutory language and the uncontested facts, we conclude that Glacier satisfied its burden of showing no genuine issue of material fact and that Glacier was entitled to judgment as a matter of law.

II.

Mountain requests that this Court grant equitable relief from the forfeiture. Our standard of review in equity cases is set forth in õ 3-2-204(5), MCA. Under that provision, we have " 'a duty to determine all of the issues of [the] case and to do complete justice.' " Blakely v. Kelstrup (1994), 267 Mont. 274, 276, 883 P.2d 814, 816 (quoting Peterson v. Montana Bank of Bozeman (1984), 212 Mont. 37, 49, 687 P.2d 673, 679). Section 24.7 of the coal lease provided that if after receiving notice of default Mountain failed to cure the default within the ten-day grace period, the lease would "automatically terminate." Nonetheless, in Blakely, we explained that "[a] contract which requires forfeiture in case of default does not divest a court of equity of its power to relieve a party from the consequences of his default." Blakely, 883 P.2d at 817. Accordingly, even though the parties agreed that forfeiture would result from Mountain's default, this Court may, under appropriate circumstances, still grant equitable relief.

The party requesting equitable relief must set forth facts which appeal to the conscience of a court of equity. Parrott v. Heller (1976), 171 Mont. 212, 214, 557 P.2d 819, 820. In addition, we have repeatedly held that when requesting equitable relief under õ 28-1-104, MCA, the party requesting such relief must attempt to make payment of the entire contract balance within a reasonable time after service of a notice of default. Only by making such full compensation can a party be relieved from the forfeiture. Blakely, 883 P.2d at 817 ("[b]efore a party will be granted relief from forfeiture

under õ 28-1-104, MCA, the party must offer to make full compensation under the contract"); Club Buffet Bar, Inc. v. Lilienthal (1994), 268 Mont. 164, 885 P.2d 526 (party requesting relief from forfeiture under õ 28-1-104 must tender full compensation as a condition precedent to relief); Daugherty Cattle Co. v. General Const. Company (1992), 254 Mont. 479, 839 P.2d 562 (antiforfeiture statute did not prohibit seller from declaring forfeiture when purchaser tendered less than full compensation as contemplated by õ 28-1-104); Schweigert v. Fowler (1990), 240 Mont. 424, 784 P.2d 405 (õ 28-1-104, MCA, is not helpful to Schweigerts because they did not offer to pay full consideration for the property).

Mountain insists that it acted in good faith throughout the time that it held Glacier's property but contends that, because of "acts of God" (fire and excessive snowfall), it experienced severe financial distress and could not meet its obligations under the note. Mountain maintains that it made its best efforts to perform its obligations under the contract and did not act in a "grossly negligent, willful or fraudulent" manner that would prevent equitable relief from forfeiture under õ 28-1-104, MCA.

Glacier, on the other hand, asserts that Mountain's conduct was grossly negligent, willful and verged on fraudulent. Glacier contends, first, that Mountain knowingly tendered a check drawn on a closed account. In addition, Mountain, despite accommodations and notices from Glacier, continued to mine and sell coal while in default for over a year. Glacier further asserts that by failing to meet its financial obligations not only to Glacier, but to other creditors, Mountain placed the coal site permit in jeopardy. Finally, Glacier maintains that Mountain's "eleventh hour" attempt to cure the default was not in accord with õ 28-1-104, MCA, because Mountain did not tender "full compensation" under the contract. As a result of the foregoing, Glacier requests that this Court deny Mountain's request for equitable relief.

This Court has the equitable power to relieve a party from the harsh effect of a forfeiture. However, the circumstances warranting such relief must not only meet the statutory requirements of tendering full compensation, and not acting in a grossly negligent, willful or fraudulent manner, but also, the party must assert facts which appeal to the conscience of the court of equity.

Mountain's request for equitable relief is deficient for two reasons. First, Mountain did not, at any time, attempt to tender full compensation under the coal lease. Mountain submitted two checks. The first check was written for a sum substantially less than the amount due and was written on a closed account. Mountain tendered the second check claiming it satisfied its "best estimate" of the amount due; however, the $733,000

check did not approach the full amount necessary to satisfy Mountain's obligations under the terms of the ten-year lease as õ 28-1-104, MCA, contemplates. In addition, the second check, tendered nearly one year after it was due, was not presented within a reasonable time after the default.

Second, Mountain has failed to appeal to the conscience of this Court. We have held that mere financial inability is not sufficient to appeal to the conscience of a court of equity. Kovacich v. Metals Bank & Trust Company (1961), 139 Mont. 449, 451, 365 P.2d 639, 640. Moreover, this Court will not "set aside the deliberate contracts of parties because time has demonstrated that the obligation of one of the parties was onerous or unprofitable." Kovacich, 365 P.2d at 640.

Mountain asserts that the Court should grant equitable relief as it did in Parrott v. Heller (1976), 171 Mont. 212, 557 P.2d 819. Indeed, in Parrott, we concluded that the Hellers were entitled to equitable relief under õ 17-102, RCM (1947) (now õ 28-1-104, MCA) despite the fact that the Hellers' forfeiture was caused solely by their inability to pay. The Hellers experienced financial hardship due to crop failures, much like Mountain experienced financial hardship due to fire and excessive snowfall. However, the Hellers' situation differed in that they had made scheduled payments for four consecutive years before defaulting. The Hellers had accumulated substantial equity in the land. The Hellers, throughout the period of default, made several attempts to secure the necessary funds. In addition, the Hellers, unlike Mountain, paid the entire contract balance plus interest as soon as they acquired the funds. The facts of Parrott are distinguishable, and thus it does not control the resolution of this case.

Mountain's request for equitable relief is deficient because it fails to meet the statutory and common law criteria. We conclude that the District Court did not err in denying equitable relief. Affirmed.

/S/ W. WILLIAM LEAPHART


We concur:

/S/ J. A. TURNAGE
/S/ JAMES C. NELSON
/S/ TERRY N. TRIEWEILER
/S/ KARLA M. GRAY