No. 01-759

IN THE SUPREME COURT OF THE STATE OF MONTANA

2002 MT 124N

ROBERT L. JOHNSON and ANITA A. JOHNSON,

       Plaintiffs and Respondents,

   v.

ALEX E. SMITH, TRUDY L. SMITH
and GEORGE S. HAMILTON,

       Defendants and Appellants.

APPEAL FROM:    District Court of the Tenth Judicial District,
In and For the County of Fergus,
Honorable John C. McKeon, Judge Presiding

COUNSEL OF RECORD:

       For Appellants:

          William E. Berger, Attorney at Law, Lewistown, Montana

       For Respondents:

          Robert L. Johnson, Attorney at Law, Lewistown, Montana

Submitted on Briefs:  February 28, 2002

Decided:  June 11, 2002

Filed:

_____
Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c) Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent but shall be filed as a public document with the Clerk of the Supreme Court and shall be reported by case title, Supreme Court cause number and result to the State Reporter Publishing Company and to West Group in the quarterly table of noncitable cases issued by this Court.

¶2 Alex Smith, Trudy Smith and George Hamilton (collectively Appellants) appeal from the judgment of the Tenth Judicial District Court, Fergus County, granting partial rescission of a Contract for Deed between the Smiths and Robert and Anita Johnson. We affirm.

¶3 We address the following issues on appeal:

¶4 1. Did the District Court err in concluding that the Smiths' use of the contract for deed was unlawful as contrary to good morals?

¶5 2. Did the District Court err in concluding that the contract for deed can be partially rescinded?

*Facts and Procedural Background*

¶6 This litigation involves several adjoining properties outside of Lewistown, Montana. The Johnsons originally owned three parcels of land. In 1989, the Smiths purchased two of these parcels from the Johnsons: a 6.2 acre parcel which included a house (Smiths' Parcel) and an 87 acre parcel (Tract 1). The Johnsons retained a parcel adjoining in part both Tract 1 and the Smiths' Parcel. This property is listed in the National Registry of Historic Places and is known as the Mill House. Tract 1 includes a 55 foot strip of

land (the Strip) across which is a road to the Mill House. Although the access road has been in existence for approximately one hundred years, there is no recorded easement for it across the Strip, and the Johnsons did not reserve an easement in the contract for deed to the Smiths.

¶7   Hamilton holds legal title to a parcel of land adjoining the Strip (West Tract). Access roads from Highway 466 cross the West Tract and the Strip, leading to both the Smiths' Parcel and the Mill House. In 1959, A.W. Johnson, Robert's father, and Hamilton agreed to a land exchange wherein Hamilton would convey to Johnson the West Tract in exchange for a one acre tract of land owned by Johnson (East Tract). Because of a disparity in value between the tracts, Johnson also agreed to pay Hamilton $1600.00 in cash. Johnson and Hamilton walked the two parcels and partially staked the perimeters and took possession of the respective tracts. After the exchange, Johnson built a road to access the Smiths' Parcel and began landscaping the West Tract to provide an aesthetically pleasing entrance to both the Mill House and the Smiths' Parcel. Although both Hamilton and Johnson took possession of the exchanged properties, legal title to the tracts was never transferred.

¶8   In 1995, the Smiths filed suit against the Johnsons to enforce a provision in the contract for deed which required the Johnsons to provide the Smiths with insurable access to the Smiths' Parcel. At that time, Johnson contacted Hamilton and requested his cooperation in completing the paperwork to legally transfer the exchanged tracts of land. Johnson had been in possession of the West Tract

3

since inheriting it from his father. Hamilton, for the first time, asserted that there was no agreement concerning the land exchange. In order to settle the dispute with the Smiths, Johnson obtained an easement from Hamilton across the West Tract for the access roads to both Mill House and the Smiths' Parcel. However, this easement did not extend from the West Tract across the Strip to Mill House.

¶9 In 1999, Johnsons filed suit against Hamilton to enforce the oral agreement to exchange the West Tract and East Tract. After a trial, the court ordered specific performance of the 1959 oral contract to exchange the land. The court also entered a decree "forever barring [Hamilton] from interfering with the passage and landscaping rights granted [Johnsons] in the Easements agreement." Again, this guaranteed the Johnsons access across the West Tract but did not include the portion of their access road that crossed the Strip.

¶10 Hamilton testified that he was angry about the result of the litigation. About one month after the judgment was entered, the Johnsons discovered survey stakes, flags and fencing material along the borders of the Strip between the Mill House and the West Tract. Anita Johnson contacted the Smiths and was told that they had given Hamilton an option to buy the Strip subject to reserving an easement. Anita then contacted Hamilton, and he responded that he had bought the Strip and was preparing to bulldoze off the trees and brush located on it and that he would also enclose it with the fencing material.

4

¶11 Soon after, the Johnsons initiated this action requesting partial rescission or modification of the contract for deed between the Johnsons and the Smiths as to the Strip. A trial was held before the District Court, and the court ultimately ordered the partial rescission. Smiths and Hamilton appeal.

*Standard of Review*

¶12  Our standard of review in equity cases is set forth in § 3-2-204(5), MCA.  Under that provision, we have a "duty to determine all of the issues of the case and to do complete justice."  *Glacier Park Co. v. Mountain, Inc.* (1997), 285 Mont. 420, 427, 949 P.2d 229, 233.

## *Issue One*

¶13  Did the District Court err in concluding that the Smiths' use of the contract for deed was unlawful as contrary to good morals?

¶14  Appellants argue that the proposed surveying, fencing and clearing of brush on land is not an infringement of an adjoining landowner's rights and, therefore, those actions cannot form the basis for finding the contract for deed unlawful.  Appellants further argue that this is a case about the rights of an owner to use land as he desires.  In this case, they argue,  selling the Strip, clearing it of brush and trees, and fencing it, are not illegal, immoral or beyond the realm of rights of ownership.

¶15  Johnsons argue that the sale of the Strip by Smiths to Hamilton was meant to harass them and to provide leverage for Smiths to get a wider access over their existing road and that the District Court correctly prevented them from doing so.

¶16  The District Court found that the Smiths have never used the Strip for any purpose, that the Strip does not provide Hamilton access to any other property he owns and that the Strip is of no significant agricultural value to any of the Appellants.  Additionally, the court found that the transfer of the Strip to

6

Hamilton would unduly harass Johnsons and frustrate the Judgment in the previous case between the Johnsons and Hamilton, and that the only credible and practical reason offered for the sale was to harass the Johnsons and provide leverage for Smiths.

¶17 Based on these findings, the court concluded that the "contemplated sale of the strip by Smiths to Hamilton constitutes an unlawful result of the contract between Johnsons and Smiths as the same is contrary to good morals."

¶18 Unlawful is defined as that which is "contrary to good morals." Section 28-2-701(3), MCA. Although "contrary to good morals" is not further defined, "good moral character" is defined in the code as "a personal history of honesty, trustworthiness, and fairness; a good reputation for fair dealings; and respect for the rights of others and for the laws of this state and nation." Section 39-8-202(5)(c), MCA (providing that applicants for licensure as a professional employer organization provide information to show their "good moral character"). This definition is similar to the one relied on by the District Court that "contrary to good morals" can include "conduct considered wrong, as opposed to right, under principles of ethics or good conscience, such as the taking [of] undue advantage of the weakness of another."

¶19 There is substantial evidence in the record supporting the District Court's finding that the transfer of the Strip to Hamilton will harass the Johnsons. Hamilton wrote a letter to the Johnsons indicating that he would bulldoze the brush and trees from the

7

Strip and at trial he admitted that he was angry about the outcome of the previous litigation. Additionally, there was substantial testimony concerning the fact that the Strip had no intrinsic value, the Smiths had never used it for any purpose and it did not border any of Hamilton's property. There is simply no credible reason why Hamilton would pay two thousand dollars for this particular 55 foot strip of land, if not simply to harass the Johnsons.

¶20 After reviewing the record, we conclude that the sale of the Strip by Smiths to Hamilton had no other purpose than to harass the Johnsons and to fuel a neighborhood feud which has now resulted in three separate lawsuits. We conclude that the District Court's findings and conclusions are correct.

*Issue Two*

¶21 Did the District Court err in concluding that the contract for deed can be partially rescinded?

¶22 Section 28-2-1714, MCA, states that rescission of a written contract may be adjudged "where the contract is unlawful for causes not apparent upon its face and the parties were not equally in fault." Here, the court concluded that the contract was unlawful and that the Smiths "are primarily the cause of and at fault for the circumstances that gave cause to this action. Those circumstances were not apparent on the face of the land sales contracts between these parties."

¶23 Appellants argue that rescission is a harsh remedy and injunctive relief is a more appropriate remedy in this case. They

argue that they have never used the Strip in any way to harm the Johnsons and that the court's finding that transfer of the Strip to Hamilton will unduly harass the Johnsons is speculative.

¶24  As noted above, the District Court correctly concluded that the contract was unlawful for causes not apparent upon its face and the parties were not equally in fault.  Therefore, rescission was an appropriate remedy.

¶25  Additionally, a court sitting in equity is empowered to fashion an equitable result.  *Blaine Bank of Montana v. Haugen* (1993), 260 Mont. 29, 35, 858 P.2d 14, 18.  We note that in addition to partially rescinding the contract, the District Court also ordered the Johnsons  to (1) pay $2000 for the Strip; (2) upon written request of Smiths, to extend the width of the access easement given to Smiths from 16 feet wide to 30 feet wide; and (3) to provide Hamilton with a written stockwater easement upon certain conditions.

¶26  We conclude that the District Court correctly determined all of the questions involved in this case and fashioned an equitable remedy.

¶27  Affirmed.

/S/ W. WILLIAM LEAPHART

We concur:

/S/ KARLA M. GRAY
/S/ JAMES C. NELSON
/S/ TERRY N. TRIEWEILER
/S/ JIM REGNIER

9