No. 95-536

IN THE SUPREME COURT OF THE STATE OF MONTANA

1996

IN THE MATTER OF
J.L., D.L. and A.G.
YOUTHS IN NEED OF CARE,

FILED

JUL 22 1996

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Eighteenth Judicial District,
               In and for the County of Gallatin,
               The Honorable Thomas A. Olson, Judge presiding.


COUNSEL OF RECORD:

        For Appellant:

        Derik Pomeroy, Bozeman, Montana

        For Respondent:

        Jospeh P. Mazurek, Attorney General, John Paulson,
        Assistant Attorney General; A. Michael Salvagni,
        Gallatin County Attorney, Gary Balaz, Deputy
        Gallatin County Attorney, Bozeman, Montana; Jeannine
        Newville, Bozeman, Montana, guardian ad litem; Todd
        Hillier, Bozeman, Montana, guardian ad litem;
        Marcelle Quist, Bozeman, Montana


                        Submitted on Briefs:   June 13, 1996

                                  Decided:   July 22, 1996

Filed:

_____
            Clerk

Justice William E. Hunt, Sr. delivered the Opinion of the Court.

Stephanie G. (Stephanie), the natural mother of J.L., D.L., and A.G., appeals the decision of the Eighteenth Judicial District Court, Gallatin County, terminating her parental rights to her son J.L. We affirm.

## ISSUE

The sole issue raised on appeal is whether the District Court abused its discretion by terminating Stephanie's parental rights to J.L.

## FACTS

Stephanie is the single parent of three sons, who are currently ten, eight, and four years old. The middle child, D.L., is deaf. In 1993, all three boys were adjudged youths in need of care and removed from the home due to Stephanie's inability to provide a clean, safe, and structured home environment for them. Stephanie suffered from major depression and post-traumatic stress disorder and demonstrated a passive and avoidant personality. Following the children's removal from the home, Stephanie began working with the Department of Family Services (DFS) to attempt to complete a prescribed treatment plan in order to regain custody of the children.

In early 1994, the District Court held a hearing evaluating Stephanie's progress. The District Court found that Stephanie had successfully completed seven of the objectives listed in her treatment plan, but that she had failed to complete five other objectives. The rest had been partially completed or were moot.

The District Court recognized that Stephanie loved the boys but concluded that her parenting skills and mental health needed further improvement. The District Court also determined that J.L. was experiencing emotional problems which necessitated his placement in a therapeutic foster home. Accordingly, the District Court extended DFS's temporary investigative authority for another year and left the boys in various placements outside Stephanie's home. Stephanie subsequently agreed to a second treatment plan to pursue during the following year.

In late 1994, DFS petitioned the District Court to terminate Stephanie's parental rights, asserting that Stephanie had not complied with the latest treatment plan and was not visiting any of the boys on a regular basis. In December, 1994, the District Court held a three-day hearing in this case, during which it received evidence and heard extensive testimony from all interested parties. At the hearing, the rights of the boys' respective fathers were terminated, a decision which none of the fathers appeals. Also at the hearing, Stephanie voluntarily relinquished her rights to A.G., the youngest boy, provided that he be adopted by his aunt, Stephanie's former sister-in-law.

In 1995, the District Court issued its findings of fact, conclusions of law, and order regarding termination of Stephanie's parental rights to J.L. and D.L. The District Court noted that Stephanie again had failed to comply with the treatment plan in its entirety. Nevertheless, it declined to terminate Stephanie's rights regarding D.L., finding that he was benefitting from the

3

**structured** environment of the Great Falls School for the Deaf. The District Court found that Stephanie had made progress in learning sign language and in educating herself regarding D.L.'s handicap. It further found that, with the assistance of her family, she should be able to handle the demands of a single child.

By the same order, the District Court terminated Stephanie's parental rights to J.L. The District Court recognized that Stephanie had made significant strides in coping with her personal and parenting problems, as evinced by accomplishments such as obtaining a driver's license and full-time employment. However, the District Court found that Stephanie had maintained only minimal contact with the children. It further found that she continued to experience emotional problems including a tendency to become easily overwhelmed by multiple demands and an animosity towards "the system," both of which contributed to her inability to complete the treatment plan. The District Court further noted that J.L.'s emotional state had greatly improved following his placement in the therapeutic foster home and that it was in his best interests to remain in a highly structured environment. For these reasons, the District Court terminated Stephanie's parental rights to J.L. Stephanie appeals.

## STANDARD OF REVIEW

In cases involving the termination of parental rights, this Court will affirm a district court's findings of fact unless the findings are clearly erroneous. In the Matter of J.S. and P.S. (1994), 269 Mont. 170, 173, 887 P.2d 719, 720. We will affirm a

district court's conclusions of law if they are correct. <u>Matter of J.S.</u> 887 P.2d at 720. See also In the Matter of D.H. and F.H. (1994), 264 Mont. 521, 872 P.2d 803; In the Matter of K.F.L. and N.L. (Mont. 1996), 910 P.2d 241, 53 St.Rep. 57.

Because the termination of parental rights involves fundamental liberty interests, the party seeking termination must present clear and convincing evidence to the District Court that the prerequisite statutory criteria for termination have been met. In the Matter of M.M. (1995), 271 Mont. 52, 56, 894 P.2d 298, 301 (citing In the Matter of J.R. (1992), 253 Mont. 434, 438, 833 P.2d 1063, 1066). The criteria for termination are set forth in § 41-3-609, MCA, which provides in pertinent part:

> (1) The court may order a termination of the parent-child legal relationship upon a finding that any of the following circumstances exist: .
> (c) the child is an adjudicated youth in need of care and both of the following exist:
> (i) an appropriate treatment plan that has been approved by the court has not been complied with by the parents or has not been successful; and
> (ii) the conduct or condition of the parents rendering them unfit is unlikely to change within a reasonable time .

Section 41-3-609(1)(c), MCA. Section 41-3-609, MCA, further provides that

> [i]n determining whether the conduct or condition of the parents is unlikely to change within a reasonable time, the court must enter a finding that continuation of the parent-child legal relationship will likely result in continued abuse or neglect or that the conduct or the condition of the parents renders the parents unfit, unable, or unwilling to give the child adequate parental care. In making the determinations, the court shall consider but is not limited to the following:
> (a) emotional illness, mental illness, or mental deficiency of the parent of such duration or nature as to render the parent unlikely to care for the ongoing

5

physical, mental, and emotional needs of the child within a reasonable time. .

Section 41-3-609(2)(a), MCA. When making such a determination, the district court must give primary consideration to the best interests of the child, as demonstrated by the child's physical, mental, and emotional conditions and needs. Section 41-3-609(3), MCA; In the Matter of T.M. (1994), 267 Mont. 75, 79, 881 P.2d *1333, 1336;* In the Matter of J.J.G. (1994), 266 Mont. 274, 282, 880 P.2d 808, 813.

### DISCUSSION

In arguing that the District Court erred by terminating her parental rights to J.L., Stephanie alleges two specifications of error. First, she argues that the District Court's decision was not supported by clear and convincing evidence and, therefore, must be reversed. Second, she argues that the District Court's decision is "logically inconsistent," because it determined that she was fit to parent one of the boys but unfit to parent the other.

Stephanie asserts that the District Court could not have found clear and convincing evidence to justify termination of her parental rights because the evidence presented at the hearing conflicted in part. While the children's guardian ad litem recommended that Stephanie's parental rights be terminated, two psychologists testified that she should be allowed to retain her parental rights and resume custody of the children. While the District Court highlighted Stephanie's on-going difficulties in working with the system and taking responsibility, it also acknowledged that Stephanie's personal and parenting problems were

improving, as illustrated by her obtaining both a steady job and a driver's license. Stephanie contends that the existence of such conflicting testimony and findings precluded the District Court from discovering clear and convincing evidence in favor of termination of her parental rights.

This Court has not defined "clear and convincing evidence" in the area of termination of parental rights. However, in a similar case, the Kansas Supreme Court held that

> [c]lear and convincing proof is simply a requirement that a preponderance of the evidence be definite, clear, and convincing, or that a particular issue must be clearly established by a preponderance of the evidence or by a clear preponderance of proof. This requirement does not call for unanswerable or conclusive evidence. The quality of proof, to be clear and convincing, is somewhere between the rule in ordinary civil cases and the requirement of criminal procedure--that is, it must be more than a mere preponderance but not beyond a reasonable doubt.

In the Interest of S.M.Q. (Kan. 1990), 796 P.2d 543, 545. This definition also comports with the meaning of "clear and convincing evidence" as articulated in Montana case law and Montana statutory law in other legal areas. See In the Matter of Shennum (1984), 210 Mont. 442, 684 P.2d 1073 (commitment of an adult for serious mental illness); § 27-1-221(5), MCA (entitlement to punitive damages). Accordingly, the fact that the evidence presented in a case conflicts does not automatically preclude a finding that clear and convincing evidence to support a given position exists.

Moreover, while the District Court was charged with discovering clear and convincing evidence to justify termination of Stephanie's parental rights, it is not the function of this

**appellate court to "reweigh the evidence,** substitute its evaluation of the evidence for that of the trial court, or pass upon the credibility of witnesses." Interest of S.M.O., 796 P.2d at 545. Rather, we must ask whether the District Court's findings are clearly erroneous. Matter of J.S., 887 P.2d at 720. If they are not, they must be upheld.

In this case, the District Court recognized the strides Stephanie made in improving herself, both as an individual and as a parent. Yet the District Court also found that Stephanie still experienced very significant problems in taking responsibility and in dealing with the pressures of parenting, as evinced by her continued inability to substantively comply with a treatment plan and by her sporadic contact with the children. Moreover, the District Court further found that J.L.'s continuing emotional problems necessitated permanent placement in a highly structured environment. These findings are supported by substantial evidence and are not otherwise clearly erroneous.

Stephanie also argues that the decision of the District Court is "logically inconsistent" because the District Court found that Stephanie could properly parent D.L., while simultaneously terminating her parental rights to J.L. Stephanie contends that she is either an adequate parent or she is not, and that if she can successfully parent one of her children she can successfully parent both of them.

We disagree. The District Court specifically found that Stephanie functioned better when dealing with D.L. alone, rather

than when faced with the responsibility for caring for more than one child at a time. Further, it found that J.L. needed a highly-structured therapeutic environment which Stephanie could not give him. D.L., on the other hand, would not present such a difficult parenting challenge because of his continued enrollment in the Great Falls School for the Deaf and because of the assistance of Stephanie's family. Again, these findings are supported by substantial evidence and are not clearly erroneous.

The judgment of the District Court is affirmed.

_____
Justice

We Concur:

_____

_____

_____

_____
Justices

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that the following certified order was sent by United States mail, prepaid, to the following named:

Derik Pomeroy
Attorney at Law
1705 W. College, Ste. A
Bozeman, MT 59715

Hon. Joseph P. Mazurek, A.G.
John Paulson, Assistant
Justice Bldg.
Helena, MT 59621

A. Michael Salvagni, County Attorney
Gary Balaz, Deputy
615 So. 16th Ave.
Bozeman, MT 59715

Jeannine Newville
1536 So. Grand Ave.
Bozeman, MT 59715


Todd Hillier
Attorney at Law
108 So. Church
Bozeman, MT 59715

Marcelle Quist
Attorney at Law
1807 W. Dickerson, Ste. D
Bozeman, MT 59715

ED SMITH
CLERK OF THE SUPREME COURT

STATE OF MONTANA

BY: *A. Gallagher*
Deputy