No. 98-392

IN THE SUPREME COURT OF THE STATE OF MONTANA

1999 MT 174

IN THE MATTER OF THE INQUIRY INTO

T.B., D.H., and R.H.,

Youths in Need of Care.

APPEAL FROM: District Court of the Sixth Judicial District,

In and for the County of Sweet Grass,

The Honorable Wm. Nels Swandal, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Dan Yardley, Yardley & Yardley; Livingston, Montana

For Respondent:

Hon. Joseph P. Mazurek, Attorney General; Mark W. Mattioli,

Assistant Attorney General; Helena, Montana

Christopher Manos, Sweet Grass County Attorney; Big Timber, Montana

Kendra K. Anderson, Attorney at Law; Livingston, Montana

Submitted on Briefs: March 18, 1999

Decided: July 27, 1999

Filed:

_____

Clerk

Justice Jim Regnier delivered the opinion of the Court.

¶1. Richard "Denver" Hinman appeals from an April 20, 1998, order of the Sixth Judicial District Court, Sweetgrass County, terminating his parental rights to his children, D.H. and R.H. His rights were terminated while serving a twelve-year prison sentence in the Montana State Prison for the crime of felony sexual assault involving his stepdaughter, T.B. The mother of the children relinquished her parental rights and consented to adoption. We affirm the District Court's order.

¶2. The dispositive issue on appeal is whether the District Court erred when it terminated the parental rights of Richard "Denver" Hinman?

## FACTUAL BACKGROUND

¶3. Richard "Denver" Hinman and Roben Beatty Hinman are the natural parents of twins, D.H. and R.H., who were born on January 18, 1993. Roben also is the natural mother and Richard was the stepfather of T.B., who was born on May 12, 1985.

¶4. On February 4, 1994, an order was entered in the Sixth Judicial District Court, Sweetgrass County, which granted the Department of Public Health and Human Services (DPHHS) temporary investigative authority and protective services over the children, because T.B. reported that Richard sexually abused her. Roben, at the suggestion of DPHHS, previously obtained a temporary restraining order against Richard, and she and the children found a separate place to live. Richard's visits with the twins were scheduled and monitored by DPHHS.

¶5. On April 28, 1994, the District Court extended the time for which DPHHS had authority over the children. The District Court also ordered Roben to clean her house and to keep the children neat and clean. There were concerns that Roben did not sufficiently provide for the children's care.

¶6. T.B. was placed in a foster care setting on May 20, 1994, at the recommendation of her therapist. Just six days later, on May 26, 1994, Roben and the twins were found at Richard's residence in violation of the restraining order. For the twins' protection, they were placed in foster care on May 27, 1994.

¶7. Richard was arrested and placed in the Sweet Grass County Jail on June 16, 1994, after he was found at Roben's house in violation of the restraining order. On July 7, 1994, Richard pled guilty to charges of felony sexual assault involving T.B. He

was sentenced to the Montana State Prison for twelve years. Just months later, Roben and Richard were divorced.

¶8. Finally, on August 14, 1995, the District Court granted DPHHS temporary custody of the children, which was repeatedly extended. Then, on May 16, 1997, DPHHS filed a petition for permanent legal custody and termination of parental rights regarding the three children. A hearing was held on March 31, 1998. Robin submitted an affidavit and relinquished her parental rights, consenting to the adoption of her children. Richard contested DPHHS's petition as it related to his parental rights over the twins. Nonetheless, on April 20, 1998, the District Court entered its findings of fact and conclusions of law, and terminated Richard's rights to his twins.

¶9. On appeal, we consider the following pertinent facts: Richard was sentenced to twelve years in prison on July 7, 1994; he has had no visitation with the twins since then; to be eligible for parole, Richard must serve three years of his sentence or successfully complete phases I and II of the sex offender program at the Montana State Prison;[1] he was denied parole in July 1997 and is not eligible for parole again until year 2000; and as a condition of parole, Richard will be prohibited from unsupervised contact with minors, including his children.

¶10. Both Roben and Richard signed service treatment plans. In the first of these plans, which apparently was signed on February 28, 1994, Richard was required to submit to a sexual offender evaluation. In the second plan, which apparently was signed on June 8, 1994, Roben and Richard were required to attend a parenting skills program and Roben was required to have a psychological evaluation. Then, after Richard and Roben were divorced, Roben and her new boyfriend signed a service treatment agreement on May 19, 1995, which was approved by the District Court. The service treatment agreement required both Roben's boyfriend and Richard to undergo sex offender evaluations; however, Richard did not sign the agreement.

¶11. The first two treatment plans were not admitted into evidence and cannot be found in the record. The third plan is found in the record, but it was not admitted into evidence.

## STANDARD OF REVIEW

**¶12. In *In Matter of D.H. and F.H.* (1994), 264 Mont. 521, 524, 872 P.2d 803, 805, we clarified the standard of review for cases involving a youth in need of care and termination of parental rights. The appropriate standard of review to be applied to purely factual findings in a termination of parental rights proceeding is the clearly erroneous standard. Findings of fact are clearly erroneous if they are not supported by substantial evidence, the court misapprehended the effect of the evidence, or this Court's review of the record convinces it that a mistake has been made. *See Interstate Prod. Credit Ass'n v. DeSaye* (1991), 250 Mont. 320, 323, 820 P.2d 1285, 1287. We review conclusions of law in a termination proceeding to determine if those conclusions are correct. *See In Matter of D.H. and F.H.*, 264 Mont. at 524, 872 P.2d at 805; *see also In re Matter of J.J.G.* (1994), 266 Mont. 274, 281, 880 P.2d 808, 812.**

**¶13. This Court has recognized that "a natural parent's right to care and custody of a child is a fundamental liberty interest, which must be protected by fundamentally fair procedures." *In Matter of R.B., Jr.* (1985), 217 Mont. 99, 103, 703 P.2d 846, 848. Accordingly, prior to terminating an individual's parental rights, the district court must adequately address each applicable statutory requirement, *see In Matter of R. B., Jr.*, 217 Mont. at 103, 703 P.2d at 848, and find clear and convincing evidence that the statutory criteria have been met, *see In Matter of J.L., D.L. and A.G.* (1996), 277 Mont. 284, 288, 922 P.2d 459, 461.**

## DISCUSSION

**¶14. The appropriate statutory requirements in this case are found in § 41-3-609, MCA, which provides:**

(1) The court may order a termination of the parent-child legal relationship upon a finding that . . . :

. . . .

(e) the child is an adjudicated youth in need of care and both of the following exist:

(i) an appropriate treatment plan that has been approved by the court has not been complied with by the parents or has not been successful; and

(ii) the conduct or condition of the parents rendering them unfit is unlikely to change within a reasonable time.

. . . .

(4) A treatment plan is not required under this part upon a finding by the court following hearing if:

. . . .

(b) the parent is incarcerated for more than 1 year and a treatment plan is not practical considering the incarceration.

**¶15. The parties disagree about whether these requirements have been met. The State argues that the District Court correctly found that it was not practical to expect resolution of Richard's condition via an in-prison treatment plan. The State points out that an express provision of Richard's twelve-year sentence prohibits him from having unsupervised contact with minors. Richard contends that the reason he has not completed a treatment plan is because DPHHS made no attempt to have him complete one once he was incarcerated.**

**¶16. Richard cites our decision *In Matter of W.Z.* (1997), 285 Mont. 16, 29, 946 P.2d 125, 133, in which we stated that before a district court may terminate parental rights it must first establish a treatment plan, otherwise establish that a plan is not practical under the criteria set forth in § 41-3-609(4)(b), MCA. In *In Matter of W.Z.*, 285 Mont. 16, 29-30, 946 P.2d 125, 133, we concluded that the District Court erred**

when it terminated a father's right before a treatment plan was proposed and when DPHHS did not attempt to create or implement a treatment plan with certain prison programs that might have been incorporated into an acceptable plan.

¶17. Here, the District Court confronted facts which were substantially different than those present in *In Matter of W.Z.* Section 41-3-609(4)(b), MCA, provides that "[a] treatment plan is not required . . . upon a finding by the court following hearing if . . . the parent is incarcerated for more than 1 year and a treatment plan is not practical considering the incarceration." In Richard's case, no treatment plan would obviate the difficulty his twin children would have in knowing him as their father. The twins were only one year old when Richard went to prison, and they have not seen him since then. They are now six years old. Without parole, Richard will not get out of prison for another seven years, when the children are thirteen years old. Even with parol, Richard would be limited to only supervised visits with the twins. Thus, Richard's incarceration and sentencing conditions present a substantial, long-term impediment to his ability to provide for his children's physical, mental, and emotional needs. Therefore, under the facts of this case, we conclude that the District Court did not err when it determined that a treatment plan was not practical.

¶18. Since a treatment plan was not required, the District Court needed only to consider whether Richard's conduct or condition rendering him unfit as a parent is unlikely to change within a reasonable period of time, pursuant to § 41-3-609(1)(e)(ii), MCA. In addressing this issue, the court found that Richard's twelve-year conviction and the condition that he can have only supervised contact with the two children renders him unable to provide his children adequate parental care. The District Court's findings are appropriate pursuant to § 41-3-609(2), MCA, which requires the court to consider whether the conduct or the condition of the parent renders the parent unfit, unable, or unwilling to give the child adequate parental care, and § 41-3-609(2)(e), MCA, which requires the court to consider the parent's long-term confinement. Section 41-3-609(3), MCA, further provides that:

In considering any of the factors . . . in terminating the parent-child relationship, the court shall give primary consideration to the physical, mental, and emotional conditions and needs of the child.

¶19. In the case before us, the record substantially supports the District Court's

determination that Richard cannot resume his parental responsibilities of caring for his children within a reasonable time. Richard's long-term confinement combined with a condition of supervised visitation with his children severely limits his parenting abilities to the extent that a continuation of the parent-child relationship is not in the children's best interests. Although Richard contends that the court could ultimately modify the condition that prevents him from having unsupervised contact with his children, this is speculative at best.

¶20. We therefore conclude that the District Court did not err when it terminated Richard's parental rights.

¶21. Affirmed.

/S/ JIM REGNIER

We Concur:

/S/ TERRY N. TRIEWEILER

/S/ W. WILLIAM LEAPHART

/S/ JAMES C. NELSON

/S/ KARLA M. GRAY

1. [1] We concluded in a December 15, 1998, order that to be eligible for parole Richard must either successfully complete phases I and II of the sex offender program at the Montana State Prison, or serve three years of his sentence.