No. 00-269

IN THE SUPREME COURT OF THE STATE OF MONTANA

2001 MT 136

IN THE MATTER OF M.F.B.,

D.A.B., M.S.B., and S.L.B.,

Youths in Need of Care.

APPEAL FROM: District Court of the Twentieth Judicial District,

In and for the County of Sanders,

Honorable C. B. McNeil, Judge Presiding

COUNSEL OF RECORD:

For Appellant:

Rebecca T. Dupuis, Attorney at Law, Polson, Montana

For Respondent:

Honorable Joseph P. Mazurek, Attorney General; Tammy K. Plubell,

Assistant Attorney General, Helena, Montana

Robert Zimmerman, County Attorney, Thompson Falls, Montana

Submitted on Briefs: February 16, 2001
Decided: August 1, 2001

Filed:

_____

Clerk

Chief Justice Karla M. Gray delivered the Opinion of the Court.

¶1 The Twentieth Judicial District Court, Sanders County, terminated the parental rights of the mother of M.F.B., D.A.B., M.S.B., and S.L.B. The mother appeals. We affirm.

¶2 The issue on appeal is whether the District Court erred in terminating the mother's parental rights.

¶3 In December of 1997, the Department of Public Health and Human Services (DPHHS) took M.F.B., D.A.B., M.S.B., and S.L.B. under protective custody based on the then-most recent in a long history of referrals regarding abuse in the family. Ranging in age from 8 to 12 years old, M.F.B., D.A.B., M.S.B., and S.L.B. were the four youngest of six children. At that time, M.S.B. told a DPHHS case worker that her mother spanked the children on their heads, arms, stomachs, legs, and faces with a plastic ladle and their dad spanked them with a belt. She also told the case worker that her brother, D.A.B., had threatened her with a knife. DPHHS had received a referral on the family a month earlier, when 12-year-old M.F.B. dragged 8-year-old S.L.B. out of the school lunch room by the hair. S.L.B. told a DPHHS case worker that his dad and older brother fought with knives, his dad dragged him and his siblings by the hair, and his brother D.A.B. held a knife to M.S.B.'s throat. The children's oldest brother had admitted in 1995 to having had sexual intercourse with M.S.B. beginning when she was about a year old. That brother had not yet undergone sex offender treatment and remained with the parents when the four youngest children were removed.

¶4 Under a 1998 treatment plan promulgated by DPHHS, the mother was to obtain individual therapy with an approved therapist. Goals of the therapy were to gain a clear understanding of how to prevent her children from further emotional, physical, and sexual abuse and neglect, and to address parenting issues, her own self-esteem, her prior family history, and her dependency on her husband at the expense of her children's safety. The mother also was required to attend parenting classes as recommended by DPHHS and to participate in weekly supervised visitation with her four youngest children and in her oldest son's weekly sex offender counseling. A counselor advised her that she might have to choose between her children and her husband, whose organic brain dysfunction was blamed for his frequent violent outbursts. The mother initially chose to stay with her husband.

¶5 During the early part of 1999, as part of reunification efforts associated with family therapy, the children were returned to their parents' home for several overnight visits. Afterwards, M.S.B. reported to school officials two instances in which her father had harshly verbally abused her and her mother had not intervened. The mother did not report these incidents to the family's therapist until the therapist questioned her about M.S.B.'s reports.

¶6 In late July or early August of 1999, the mother left her husband and the family home in Thompson Falls, Montana, and moved to a shelter in Kalispell, Montana. The father's parental rights were terminated by default in October of 1999. The District Court held a hearing on DPHHS's request for termination of the mother's parental rights in January and February of 2000. At that time, the mother was living in a one-room apartment and searching for a job. M.F.B. was living in a youth group home and D.A.B., M.S.B., and S.L. B. were living in foster care homes.

¶7 After the hearing, the District Court entered findings of fact, conclusions of law and an order terminating the mother's parental rights. The court found that, from the time the mother moved to Kalispell in the summer of 1999 until the hearings in January and February of 2000, she had "at best, sporadic contact with the children who remain in Sanders County." The court found the mother had not complied with the treatment plan, that her 15-month failure to do so was conduct unlikely to change within a reasonable time, and that continuation of the parent-child relationship would likely result in continued abuse or neglect of the children. The court further found the mother "is not willing or able to carry out the tasks associated with parenting due to her mental or emotional illness." Finally, the court found DPHHS had made reasonable efforts to prevent or eliminate the need for removal of the children and to make it possible for the children to return home. The mother appeals.

¶8 Did the District Court err in terminating the mother's parental rights to M.F.B., D.A.B., M.S.B., and S.L.B.?

¶9 This Court's standards in reviewing a district court's termination of parental rights are whether the district court's findings of fact are clearly erroneous and whether its conclusions of law are correct. *In re R.B.O.,* (1996), 277 Mont. 272, 277, 921 P.2d 268, 271 (citations omitted). A finding is clearly erroneous only if it is not supported by substantial evidence or, if so supported, the district court misapprehended the effect of the evidence or this Court is left with a definite or firm conviction that a mistake has been

committed. *In re C.F.* , 2001 MT 19, ¶ 11, 304 Mont. 134, ¶ 11, 18 P.3d 1014, ¶ 11 (citations omitted). The mother, however, points to our language in *In re B.F.,* 2000 MT 231, ¶ 7, 301 Mont. 281, ¶ 7, 8 P.3d 790, ¶ 7, regarding clear and convincing evidence.

¶10 We recently reaffirmed our "clearly erroneous" standard of review of trial court findings of fact in cases like that presently before us. *See In Re the Matter of A. C.*, 2001 MT 126, ¶ 36, ___ Mont. ___, ¶ 36, ___ P.3d ___, ¶ 36. We again clarify here that "clear and convincing evidence" relates to a party's burden of proof in the trial court in certain cases. *See, e.g., In re T.B.*, 1999 MT 174, ¶ 13, 295 Mont. 234, ¶ 13, 983 P.2d 929, ¶ 13; *see also Wareing v. Schreckendgust* (1996), 280 Mont. 196, 206, 930 P.2d 37, 43. Our standard of review of a trial court's findings of fact remains the clearly erroneous test. *See T. B.,* ¶ 12. We proceed, then, to apply our standards of review to the present case.

¶11 The following provisions of § 41-3-609, MCA, were applied in this case:

> (1) The court may order a termination of the parent-child legal relationship upon a finding that any of the following circumstances exist:
>
> . . .
>
> (f) the child is an adjudicated youth in need of care and both of the following exist:
>
> (i) an appropriate treatment plan that has been approved by the court has not been complied with by the parents or has not been successful; and
>
> (ii) the conduct or condition of the parents rendering them unfit is unlikely to change within a reasonable time.
>
> (2) In determining whether the conduct or condition of the parents is unlikely to change within a reasonable time, the court shall enter a finding that continuation of the parent-child legal relationship will likely result in continued abuse or neglect or that the conduct or the condition of the parents renders the parents unfit, unable, or unwilling to give the child adequate parental care. In making the determinations, the court shall consider but is not limited to the following:
>
> (a) emotional illness, mental illness, or mental deficiency of the parent of a duration or nature as to render the parent unlikely to care for the ongoing physical, mental, and emotional needs of the child within a reasonable time;

(b) a history of violent behavior by the parent;

(c) excessive use of intoxicating liquor or of a narcotic or dangerous drug that affects the parent's ability to care and provide for the child; and

(d) present judicially ordered long-term confinement of the parent.

(3) In considering any of the factors in subsection (2) in terminating the parent-child legal relationship, the court shall give primary consideration to the physical, mental, and emotional conditions and needs of the child.

¶12 The mother does not dispute that M.F.B., D.A.B., M.S.B., and S.L.B. were adjudicated youths in need of care pursuant to § 41-3-609(1)(f), MCA. She asserts, however, that the District Court erred in its § 41-3-609(1)(f)(i) and (ii), MCA, findings that she had not complied with the requirements of her treatment plan and that her condition is unlikely to change within a reasonable time.

¶13 The District Court's findings do not specifically address which tasks in the treatment plan the mother had failed to complete. The court did find that, after moving to Kalispell, the mother "had, at best, sporadic contact with the children who remain in Sanders County." The court's "sporadic contact" finding implicates both of the treatment plan tasks on which DPHHS introduced evidence at trial: the mother's therapy task and her weekly visitation with the children.

¶14 The specific provision of the treatment plan regarding therapy states:

[The mother] will obtain individual therapy with a [DPHHS] approved therapist. She will continue in therapy until she can demonstrate that she has a clear understanding of how to protect her children from further emotional, physical, sexual abuse, and neglect. She will put this into practice for a minimum of six months, at which time all professionals involved will assess [her] ability to protect her children within a reasonable amount of time. She will also address parenting issues, her self-esteem, prior family history, signs of sexual abuse, and her dependency on [the children's father] at the cost of her children's safety.

The mother points out that licensed clinical professional counselor Juanita Triplett

recommended temporary legal custody be extended to allow her one additional year of continued counseling. The mother also points out that psychotherapist Cindie Jobe opined at the hearing that the mother was ready to parent the children because she had sufficiently addressed her dependent personality disorder and was no longer dependent on the children's father.

¶15 The testimony on which the mother relies, however, does not address the portion of the therapy objective in her treatment plan which required that she put into practice what she learned in therapy for a minimum of six months. Nor does it fully represent the evidence of record on whether she had complied with that objective of the treatment plan.

¶16 In addition to the testimony upon which the mother relies, Jobe stated she did not know how the mother could have put into practice what she had learned in therapy for six months, because she had not had custody of her children since the plan had been put into place. The mother had discontinued therapy with Triplett when she left Thompson Falls, at which time she was making slow progress. Similarly, while Jobe subsequently had counseled the mother individually in Kalispell, the mother had not seen M.F.B., D.A.B., M.S.B., or S.L.B. since she had moved there. As a result, Jobe had never observed interaction between the mother and her children.

¶17 Diane Morrin, another licensed professional counselor who testified at the hearing, had counseled the mother both before and after she left the father and had observed interactions between the mother and her children. According to Morrin, the mother focused on her own needs rather than on those of her children and had extreme difficulty extending herself to her children. Morrin explained that the process of learning to change behavior must take place at three levels to be successful: first, at the intellectual or cognitive level; second, at the contemplative level where the person tries to integrate concepts of change into her life; and, finally, at the level of actually putting new behaviors into practice. In Morrin's observations, the mother had not progressed beyond the first level. At the time of the termination hearing, Morrin did not believe it was in the children's best interests to be returned to their mother's care.

¶18 The DPHHS case worker presented the only professional testimony specifically addressing whether the mother completed the treatment plan. The case worker testified that although the children had been in foster care for over two years, the mother had not yet complied with the therapy task of the treatment plan.

¶19 Regarding the differences in opinion among the counselors on whether the mother had made the requisite progress in therapy to be ready to parent her children, thus effectively meeting the therapy treatment plan objective, the existence of conflicting evidence does not preclude a trial court's determination that clear and convincing evidence exists to support a finding of fact. *In re C.B.*, 2001 MT 42, ¶ 15, 304 Mont. 252, ¶ 15, 20 P.3d 117, ¶ 15, citing *In re J.L.* (1996), 277 Mont. 284, 290, 922 P.2d 459, 462. Moreover, the credibility of witnesses is exclusively within the province of the finder of fact. *C.B.*, ¶ 15.

¶20 The provision of the treatment plan regarding visitation was "[the mother and father] will have weekly supervised visits with their children." The mother does not contest that she failed to meet this requirement. She relates that she moved to Kalispell for purposes of securing job training and employment; that she had no vehicle or other means of transportation from the time she left her husband through the time of the hearings; and that she was financially unable to have a telephone until November of 1999, but that she maintained contact with the children through letters and e-mail. Her argument seems to be that her failure to meet this goal was not her fault.

¶21 The mother's case worker, however, pointed out that, although the family had two vehicles, the mother did not attempt to take one when she left the father. The case worker also testified that she had contact with the mother only once, by telephone, from the time the mother moved to Kalispell in the summer of 1999 until the hearing in February of 2000. During that time, the case worker contacted the mother at M.S.B.'s request to ask why she had not been in contact with her children. The mother responded she had e-mailed two of the children. Nothing in the record indicates the mother requested any assistance from DPHHS in meeting the weekly visitation goal or in otherwise staying in touch with her children.

¶22 We conclude the District Court's finding that the mother did not complete her treatment plan is supported by substantial evidence that she did not complete the therapy task or the visitation task of that plan. We further conclude that this finding is not otherwise clearly erroneous.

¶23 The District Court also found the mother "is not willing or able to carry out the tasks associated with parenting due to her mental or emotional illness" and that she "had fifteen months to comply with the treatment plan and has not done so and the Court finds that this conduct of [the mother] rendering her unfit is unlikely to change within a reasonable time." With regard to the District Court's finding that her condition was unlikely to change

within a reasonable time, the mother points out DPHHS failed to introduce any expert testimony regarding the needs of her children. On that basis, she contends the requirements of § 41-3-609(2)(a), MCA, were not met.

¶24 DPHHS did, however, introduce testimony of foster parents of two of the children that those children's behavior and school performance had improved since they were placed in foster care. Moreover, counselor Morrin's testimony indicated that the mother's longstanding dependent personality disorder-or, in the words of § 41-3-609(2)(a), MCA, her "emotional illness, mental illness, or mental deficiency"-rendered her unfit to care for *any* child's physical, mental, and emotional needs within a reasonable time. We conclude the District Court's finding that the mother's condition was unlikely to change within a reasonable time is supported by substantial evidence and is not otherwise clearly erroneous.

¶25 We hold the District Court did not err in terminating the mother's parental rights to M. F.B., D.A.B., M.S.B., and S.L.B.

¶26 Affirmed.

/S/ KARLA M. GRAY

We concur:

/S/ JIM REGNIER

/S/ PATRICIA COTTER

/S/ W. WILLIAM LEAPHART

/S/ TERRY N. TRIEWEILER