No. 02-004

IN THE SUPREME COURT OF THE STATE OF MONTANA

2002 MT 336

EVALINE WETER A/K/A EVALEEN WETER,

        Plaintiff, Respondent and Cross-Appellant,

  v.

CHARLES E. ARCHAMBAULT, VITA A. ARCHAMBAULT,
AND ANY AND ALL OTHER PERSONS, UNKNOWN, CLAIMING
OR WHO MIGHT CLAIM ANY RIGHT, TITLE, ESTATE, OR
INTEREST IN OR LIEN OR ENCUMBRANCE UPON THE REAL
PROPERTY DESCRIBED IN THE COMPLAINT OR ANY THEREOF,
ADVERSE TO THE PLAINTIFF'S OWNERSHIP AND TITLE THERETO,
OR ANY CLOUD UPON THE PLAINTIFF'S TITLE THERETO,
WHETHER SUCH CLAIM OR POSSIBLE CLAIM BE PRESENT
OR CONTINGENT, INCLUDING ANY CLAIM OR POSSIBLE CLAIM
OF DOWER, INCHOATE OR ACCRUED, AND ANY PERSON IN
POSSESSION,

        Defendants and Appellants.

APPEAL FROM:    District Court of the Ninth Judicial District,
                   In and for the County of Glacier,
                   The Honorable Marc G. Buyske, Judge presiding.

COUNSEL OF RECORD:

        For Appellants:

                Todd A. Stubbs, Graybill, Ostrem & Crotty, PLLP, Great Falls, Montana

        For Respondent:

                K. Dale Schwanke, Jardine, Stephenson, Blewett & Weaver, P.C., Great
                Falls, Montana

                        Submitted on Briefs:  July 11, 2002
                                  Decided:  December 20, 2002

Filed:

_____
                          Clerk

Justice Terry N. Trieweiler delivered the Opinion of the Court.

¶1    The Plaintiff, Evaline Weter, brought this action in the District Court for the Ninth Judicial District in Glacier County to quiet title to certain property and to recover damages from the Defendants, Charles and Vita Archambault, for breach of contract. Archambaults counterclaimed for breach of contract, equitable relief and damages based on various tortious claims. Following a non-jury trial, the District Court entered judgment which quieted title to the property in favor of Weter, and awarded her attorney fees. Archambaults appeal the District Court's Findings of Fact, Conclusions of Law, Order and Judgment. Weter cross-appeals the District Court's findings that she is not entitled to compensatory damages for wrongful occupation and to punitive damages. We affirm the judgment of the District Court.

¶2    There are four issues on appeal:

¶3    1.    Did the District Court err when it concluded that Archambaults' breach of contract entitled Weter to cancel the contract and reclaim ownership and possession of the properties subject to the contract?

¶4    2.    Did the District Court err when it awarded reasonable attorney fees to Weter?

¶5    3.    Did the District Court err when it found that Weter was not entitled to damages for wrongful occupation?

¶6    4.    Did the District Court err when it found that Weter was not entitled to an award of punitive damages?

3

FACTUAL AND PROCEDURAL BACKGROUND

¶7    Charles and Vita Archambault executed a Contract for Deed with Evaline and the late Julian Weter on March 21, 1979, for the purchase of personal property and approximately 3,218 acres of real property including one ranch home tract and six individual farm tracts, including tracts: "C" (320 acres), "D" (465 acres), "E" (5 acres), "F" (280 acres), "G" (320 acres) and "H" (unspecified acreage).  The original contract price was $680,000, which included $100,000 for a ranch home and the land on which it was located. Archambaults purchased the ranch home property separately and it was no longer subject to the contract.  The remaining tracts were subject to a contract to purchase for $580,000 over 15 years. Weters signed six separate warranty deeds which were held in escrow pending payment pursuant to the contract and Archambaults signed and delivered six separate quit claim deeds to escrow.

¶8    Archambaults fell behind in payments on several occasions, and the Weters agreed to reform the agreements at least twice.   The last modification to the contract was signed by the Archambaults and Evaline Weter on June 3, 1993, and included an integration clause excluding all prior terms, negotiations, and/or signed contracts.  The 1993 Contract stated that the Archambaults owed a principal balance of $532,904, and required that they pay (1) $50,000 immediately; (2) $15,000 on October 1, 1993; (3) annual installments of $40,000 and $20,000 on October 15 and March 1 of each year, respectively, for 5 years; and (4) a final "balloon payment" on March 1, 1999.  The 1993 Contract also required that Archambaults pay taxes on the property and assign payments from two

4

Conservation Reserve Program (CRP) contracts to Weter. The CRP contracts provide payments to land holders who set land aside for conservation purposes and requires that the land holders not grow crops or permit grazing on those lands.

¶9 Pursuant to the contract, Archambaults made the initial $50,000 payment, and in addition, sold tract "C" to Oscar Crawford for $48,000 in June 1993. This sale was presumably authorized by paragraph 3(b) of the 1993 Contract, which provides:

> In the event that BUYERS desire certain portions of the realty, the SELLER agrees to allow such sales and to accept certain payments on the contract. The property as described in each of the exhibits numbered C, D, E, F and G may be sold as individual units as long as the minimum total price as set forth on each of said exhibits is applied to the contract balance. Thus, the SELLER will release a Warranty Deed from the escrow for the property described on each exhibit (C, D, E, F & G) so long as the amount specified on each exhibit is paid as an *extra pre-payment* on the contract . . . . [Emphasis added.]

The exhibit which accompanied the warranty deed for tract "C" provided that it "may be deeded separately to the PURCHASERS upon the payment of $48,000.00 to the principal of the Contract. . . ."

¶10 After the sale of tract "C," financial records show that Archambaults failed to make any more payments on the 1993 Contract except for two CRP payments for $41,931 each on October 28, 1993, and October 7, 1994, and a $1814 "right of way payment" on August 25, 1994. By the time Weter served notice of default on the

5

Archambaults in June 1995, the total amount of past due payments was approximately $50,000.

¶11  In March 1994, Archambaults decided that they would try to sell tract "G" to pay off part of the 1993 Contract balance.  The exhibit which accompanied the warranty deed for tract "G" provided that it "may be deeded separately to the PURCHASERS upon the payment of $128,000.00 to the principal of the Contract . . . ."  Archambaults found a willing buyer, Rocky Mountain Specialists (RMS), and agreed on a purchase price of $128,000 with a November 24, 1994, closing date.  Weter, however, told Archambaults that they owed $35,000 to bring the 1993 Contract current and that that amount would have to be paid before Archambaults could transfer tract "G."  RMS later testified that they were willing to loan Archambaults up to $35,000 to accomplish the sale, but that Archambaults refused the offer.  The sale did not occur.

¶12  On June 26, 1995, Weter provided the Archambaults with notice of default.  The 1993 Contract, in paragraph 10, provided three alternate remedies for Weter to choose from in the case of default: "Alternative I" (a remedy pursuant to breach of contract); "Alternative II" (cancellation of the contract and forfeiture of the contract property); or "Alternative III" (foreclosure on the contract properties).  Paragraph 10 further provided that Alternative II, which Weter ultimately chose, would not be available in the event that the principal balance owed on the 1993 Contract was $290,000 or less.  At the time of default, the outstanding principal balance was $408,070.82.  Had the sale of

6

tract "G" occurred, Archambaults contend that the balance could have been below $290,000.

¶13 Pursuant to Alternative II, Weter requested that the escrow agent release the quit claim deeds previously signed by Archambaults for tracts C, D, E, F, and G, and Weter recorded them on September 13, 1995. Weter's attorney sent notice of the filed quit claim deeds to the Archambaults that same day and stated "we need to focus now on having you peacefully vacate the premises as required pursuant to the terms of the contract." Weter also had the CRP contracts transferred to her name.

¶14 In April 1996, Weter attempted to sell the remaining properties to the Blackfeet Tribe, which was interested in the purchase, but had concerns regarding Archambaults' presence on the property and claim to the title for the properties. The Tribe requested assurances that Archambaults would leave the property and sign new quit claim deeds. Charles Archambault sent a letter to the Tribe, dated April 16, 1996, stating:

> In a phone conversation with Jim Kennedy [Director of the Natural Resources Department of the Blackfeet Tribe] yesterday, I discussed with him our plans to clear the property. We are currently trying to sell the mobile homes, as well as livestock, vehicles and equipment. I indicated to Jim that we would be totally off the property no later than late summer or fall. Jim assured me that this would be acceptable, and that the Tribe would work with us.

Archambaults, however, refused to sign any new quit claim deeds. Without the deeds, the Tribe refused to purchase the properties and the sale did not occur.

¶15 On June 25, 1996, Weter filed a complaint in the District Court to quiet title to the properties. However, on July 8, 1996,

7

the Archambaults, who were enrolled members of Indian Tribes but not the Blackfeet Tribe, brought suit against Weter in Blackfeet Tribal Court for breach of contract. The Tribe held that it had jurisdiction, and Archambaults moved to dismiss Weter's District Court claim without prejudice, while the Tribal Court had jurisdiction. The District Court granted Archambaults' motion.

¶16 After the District Court dismissed Weter's cause of action, Weter brought an action in federal court to challenge the Tribe's jurisdiction. The U.S. District Court agreed that the Tribe did not have jurisdiction, and the Ninth Circuit Court of Appeals affirmed the District Court on July 18, 2000. While the federal case was pending appeal, Weter re-filed this quiet title action in District Court on July 21, 1999. Weter raised additional claims for attorney fees, wrongful occupation damages, and punitive damages for Archambaults' alleged malicious prosecution of the action in Tribal Court. In her wrongful occupation claim, Weter alleged that, after notice of default, Archambaults refused to vacate her property, entered into or continued cattle-grazing leases on her property, and allowed cattle to stray onto Weter's CRP lands, causing damage to the CRP lands and a CRP payment deduction of $7092 in the fall of 1997.

¶17 A non-jury trial was held from November 13 to 15, 2000. On July 3, 2001, the District Court issued its Findings of Fact, Conclusions of Law, Order and Judgment. The Court found that Weter was entitled to cancel the 1993 Contract pursuant to Alternative II and awarded Weter attorney fees pursuant to the 1993 Contract. It denied all other relief, including punitive damages and damages for

wrongful occupation. The District Court later quieted title to the Weter properties and awarded $89,584 to Weter for attorney fees. The District Court entered final judgment on July 6, 2001. Archambaults appealed the District Court's final judgment, order granting attorney fees, and order quieting title. Weter cross-appeals the District Court's denial of damages for wrongful occupation and punitive damages.

## STANDARD OF REVIEW

¶18  We review a district court's conclusions of law to determine if they are correct. *Carbon County v. Union Reserve Coal Co., Inc.* (1995), 271 Mont. 459, 469, 898 P.2d 680, 686. We review the district court's findings of fact to determine if they are clearly erroneous. *Hansen v. 75 Ranch Co.*, 1998 MT 77, ¶ 20, 288 Mont. 310, ¶ 20, 957 P.2d 32, ¶ 20. Similarly, we will not disturb the trier-of-fact's findings that punitive damages are unavailable unless they are clearly erroneous. *See In re M.F.B.*, 2001 MT 136, ¶ 10, 305 Mont. 481, ¶ 10, 29 P.3d 480, ¶ 10. The district court's findings of fact are clearly erroneous where not supported by substantial evidence, where the court misapprehends the effect of the evidence, or where this Court's consideration of the record results in a firm conviction that a mistake has been made. *In re E.K.*, 2001 MT 279, ¶ 31, 307 Mont. 328, ¶ 31, 37 P.3d 690, ¶ 31.

## DISCUSSION

### ISSUE 1

¶19 Did the District Court err when it concluded that Archambaults' breach of contract entitled Weter to cancel the contract and reclaim ownership and possession of the properties subject to the contract?

¶20  The District Court found that Weter was entitled to cancel the 1993 Contract pursuant to Alternative II in paragraph 10 of the 1993 Contract. The court found that the principal balance outstanding at the time of default was greater than $290,000, and that Archambaults had failed to make payments as agreed, or cure the default after proper notice. In addition, the District Court

10

found that Archambaults were not excused from cancellation of the contract because of the planned sale of tract "G" to RMS because the contract required that Archambaults be current in their payments on the contract prior to purchasing individual tracts. The District Court stated:

> The language of paragraph 3(b) of the 1993 agreement, while not a model of clarity, is sufficiently plain, when read in the context of the whole agreement, to support the reasonable conclusion that before Defendants could sell any of the designated tracts of land, the payments due under the 1993 Contract had to be current. The language *extra pre-payment* obviously implies a payment in excess of what payments may otherwise be due. If payments were <u>not</u> current, then any payment made would first be used, according to the contract terms, to bring the payments current, and would not, and could not, be considered an extra pre-payment. Hence, by agreeing that any amount received from the sale of the designated tracts would be an extra pre-payment, the parties agreed that the regularly due contract payments must be current in order for the money received from the sale to be considered an *extra pre-payment*. Plaintiff was therefore within her rights under the contract to require the contract to be current before agreeing to any sale of a designated tract.

The District Court further found that Archambaults failed to comply with § 28-1-104, MCA, which requires that a party requesting relief

11

from forfeiture make an offer to tender full payment of the obligation owed, and ordered that the titles be quieted in Weter's name.

¶21 Archambaults contend that the District Court misconstrued the "clear and unambiguous" terms of paragraph 3(b) of the 1993 Contract. They contend that the provision permitted the proposed sale of tract "G," and that Weter's prevention of that sale breached the 1993 Contract and should preclude her from cancelling the contract. Archambaults contend that the sale of tract "G" would have reduced the principal balance below $290,000, and that Weter is, therefore, not entitled to enforce the forfeiture provision found at Alternative II in the 1993 Contract. Archambaults also contend that paragraph 3(b) amounted to a condition precedent which precludes Weter from cancelling the contract. Finally, Archambaults invoke this Court's equitable power, citing the factual circumstances of this case and the amount they have invested in the properties.

¶22 Weter contends that the District Court correctly interpreted paragraph 3(b), that it was not a "condition precedent" and that the sale of tract "G" could have occurred had Archambaults brought the outstanding balance current. Weter also contends that equitable relief is not appropriate here because Archambaults have possessed the property for less than the fair rental values during the 20-year course of their possession.

¶23 There is little dispute that without the sale of tract "G," the outstanding contract balance was greater than $290,000 and Alternative II was an available remedy. Therefore, we first

12

address whether the planned sale violated the terms of the 1993 Contract. When construing an instrument, "the intention of the parties is to be pursued if possible." Section 1-4-103, MCA. The role of the court is to "ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted or to omit what has been inserted." Section 1-4-101, MCA. "The whole of a contract is to be taken together so as to give effect to every part if reasonably practicable, each clause helping to interpret the other." Section 28-3-202, MCA.

¶24 The provision most important to the sale of tract "G" is paragraph 3(b) of the 1993 Contract, which provides:

> In the event that BUYERS [Archambaults] desire certain portions of the realty, the SELLER [Weter] agrees to allow such sales and to accept certain payments on the contract. The property as described in each of the exhibits numbered C, D, E, F and G may be sold as individual units as long as the minimum total price as set forth on each of said exhibits is applied to the contract balance. Thus, the SELLER will release a Warranty Deed from the escrow for the property described on each exhibit (C, D, E, F & G) so long as the amount specified on each exhibit is paid as an extra prepayment on the contract.

The exhibit for the warranty deed for tract "G," (which is one of the exhibits expressly referred to in paragraph 3(b)) provides: "[t]he following described property . . . may be deeded separately to the [Archambaults] upon the payment of $128,000.00 *to the principal of the Contract*." (Emphasis added.) Paragraph 3(b)'s cross-reference to tract "G's" warranty deed and exhibit clearly requires that the $128,000 be paid to the principal balance, rather than a payment on the outstanding balance that includes outstanding payments and accrued interest. Furthermore, pre-payment cannot be

13

"additional" until the amount of principal already due has been paid. When paragraph 3(b) and the exhibit are read together, the only reasonable interpretation of "extra pre-payment" is that it means an additional payment to what the contract already requires. Otherwise a breaching purchaser could sell the contract assets yet remain in breach of the contract. We conclude that the District Court did not err when it concluded that the sale of tract "G" was not permitted by the terms of the 1993 Contract.

¶25   Since the sale did not comply with the 1993 Contract terms, we also conclude that the District Court did not err when it found that Weter had a contractual right to block the sale. Paragraph 5 of the 1993 Contract provides:

> TITLE RETAINED BY SELLER.  It is expressly understood and agreed that title to said lands shall remain in the name of SELLER until such time as all the terms and covenants of this agreement have been fulfilled and performed by BUYERS, and all the payments made, and only in the event of such covenants, agreements and payments, shall BUYER be entitled to the conveyance of title to the above-described premises.

This paragraph expressly permits Weter to retain the title to all of the contract properties unless Archambaults comply with the 1993 Contract provisions. Archambaults were in default, and the proposed sale of tract "G" would not have cured that default. Accordingly, Weter did not breach the agreement by refusing to approve the proposed sale.

¶26   We further agree with the District Court that Archambaults could not invoke the District Court's equitable powers pursuant to § 28-1-104, MCA.  Section 28-1-104, MCA provides:

> Whenever by the terms of an obligation a party thereto incurs a forfeiture or a loss in the nature of a

14

forfeiture by reason of his failure to comply with its provisions, he may be relieved therefrom upon making full compensation to the other party, except in case of a grossly negligent, willful, or fraudulent breach of duty.

We have previously held that in order to obtain relief pursuant to § 28-1-104, MCA, the party in breach must "attempt to make payment of the entire contract balance within a reasonable time after service of a notice of default. Only by making such full compensation can a party be relieved from the forfeiture." *Glacier Park Co. v. Mountain, Inc.* (1997), 285 Mont. 420, 427, 949 P.2d 229, 233. Weter served notice of default to Archambaults in June 1995 and there is no evidence that Archambaults made any offer to pay the complete 1993 Contract balance. Only in Charles Archambault's deposition in 1998 and at the 2000 trial was there discussion regarding his willingness and ability to pay the balance, but even then, there was no offer to do so. We conclude the District Court did not err when it found that Archambaults failed to comply with the requirements set forth in § 28-1-104, MCA, and that Archambaults' breach of contract, therefore, entitled Weter to cancel the contract and reclaim possession of the properties subject to the contract.

## ISSUE 2

¶27 Did the District Court err when it awarded reasonable attorney fees to Weter?

¶28 The District Court concluded that the 1993 Contract permitted the recovery of reasonable attorney fees "incurred in the pursuit of the contract remedy [Weter] chose." The District Court also found that Weter properly gave notice of default, as required by

15

the contract, and that Weter was therefore entitled to attorney fees.

¶29 Archambaults admit that paragraph 10 of the 1993 Contract permits the collection of attorney fees; however, they contend that unlike Alternatives I and III, which expressly provide for reasonable attorney fees, Alternative II, which Weter chose as her remedy, does not include any. Weter concedes that Alternative II does not provide for the fees awarded, but contends that the additional language at the end of paragraph 10 in the 1993 Contract specifically provided for reasonable attorney fees regardless of the form of relief Weter chose.

¶30 Paragraph 10 in the 1993 Contract provides: "[i]n the event of a default and notice as described above, the SELLER [Weter] shall be entitled to receive a reasonable attorneys fee from the BUYERS [Archambaults], *regardless of which of the three alternatives are elected*." (Emphasis added.) We conclude that the 1993 Contract is sufficiently clear, and provided for reasonable attorney fees to the prevailing party regardless of the remedy that Weter chose to pursue. Therefore, we conclude that the District Court did not err when it awarded attorney fees to Weter.

ISSUE 3

¶31 Did the District Court err when it found that Weter was not entitled to damages for wrongful occupation?

¶32 The District Court concluded that Weter had failed to prove that Archambaults actually occupied Weter's property. The court found that Archambaults' refusal to sign quit claim deeds and their action in Tribal Court were not "wrongful occupation" in the sense

16

that our previous cases have recognized it. *See Glacier Park*, 285 Mont. 420, 949 P.2d 229; *Goodover v. Lindey's, Inc.* (1992), 255 Mont. 430, 843 P.2d 765; *and Martin v. Randono* (1978), 191 Mont. 266, 623 P.2d 959. The District Court stated that there was "no evidence Defendants leased the property to other persons," and found that Weter had successfully begun receiving CRP payments. In addition, the District Court concluded that Weter's election of Alternative II precluded her from damages for wrongful occupation since her right to retain all sums paid pursuant to the contract for Weter's "time, trouble and expenses" included damages of the nature claimed.

¶33 On cross-appeal, Weter contends the District Court's findings were clearly erroneous, and that the record was replete with evidence that Archambaults wrongfully occupied her properties. She cites testimony regarding an alleged contract between Charles Archambault and Lyman Denzer to lease Weter's property for cattle grazing. To prove damages for her wrongful occupation claim, Weter testified that, although she never entered into a cattle-grazing contract with Denzer, that Archambaults' lease of her property denied her the opportunity to lease her property to Denzer for two years at a rate of $13,500 per year. There was further testimony and allegations that stray cattle on the CRP lands, resulting in a CRP payment deduction, may have been cattle subject to the same cattle-grazing leases. Finally, Weter claims that testimony and other evidence regarding Archambaults' lawsuits and their refusal to sign new quit claim deeds when the prior deeds proved

17

ineffective was sufficient evidence to prove wrongful occupation by Archambaults.

¶34  Wrongful occupation damages are available pursuant to § 27-1-318, MCA, which provides that: "[t]he detriment caused by the wrongful occupation of real property . . . is deemed to be the value of the use of the property for the time of such occupation . . . ."  We have held that the "[r]easonable rental value is a proper estimation of the value of use of property."  *Goodover*, 255 Mont. 430, 439, 843 P.2d 765, 770.  We agree with the District Court that actual occupation of Weter's land has not been clearly established.

¶35  However, more importantly, we conclude that Archambaults had a right to rely on Weter's choice of remedies pursuant to the contract terms.  The 1993 Contract provides that "the SELLER may, at SELLER'S option, elect any one of the following alternatives: [*i.e.* Alternative I, II, or III]."  Alternative II expressly provides that "[i]f the BUYERS do not immediately surrender peaceable possession of all of said property, BUYERS shall be guilty of unlawful detainer and liable for the full damages allowable by law . . . ."  Alternative II, however, does not provide for damages for wrongful occupation, absent an action for wrongful detainer.

¶36  Unlawful detainer claims require adherence to the requirements set forth in §§ 70-27-101 through 212, MCA, including the service requirements set forth in § 70-27-114, MCA.  There is no evidence in the record that Weter pursued a cause of action pursuant to the requirements set forth in the unlawful detainer statutes.  We also

18

note that the record contains substantial evidence that, with respect to the CRP lands and tract "G," that Weter had no difficulty retaining possession and obtaining rents from these properties. If, as Weter alleges, Archambaults refused to quit the property and would not leave, she should have employed the procedural remedy set forth in Alternative II, an unlawful detainer action. Instead, however, Weter selectively retained possession of certain lands, and after years of litigation and Archambaults' reliance upon the contract terms, Weter now suggests that she is entitled to reasonable rents for the unspecified portions of property leased to someone else. Her claim is inconsistent with the remedies provided by the 1993 Contract. We conclude that the 1993 Contract provided an adequate remedy in the event Archambaults unlawfully refused to leave Weter's property, and Weter failed to exercise that remedy. Accordingly, we conclude the District Court did not err when it concluded that Weter had not proven wrongful occupation.

ISSUE 4

¶37 Did the District Court err when it found that Weter was not entitled to an award of punitive damages?

¶38 The District Court concluded that punitive damages were not applicable in this matter, stating:

> The linchpin of Plaintiff's claim for punitive damages is the pursuit by Defendants of an action in Blackfeet Tribal Court with respect to the 1993 Contract. Given that Defendants are Native Americans, albeit apparently not members of the Blackfeet Tribe, and given the land in question is located within the exterior boundaries of the Blackfeet Indian Reservation, and given the rather convoluted nature of case law precedent involving Indian jurisdiction questions, it was not unreasonable for

19

Defendants to pursue that avenue of redress. That the federal courts ultimately gave short shrift to the jurisdiction arguments of Defendants does not persuade this Court an award of punitive damages is appropriate on this record. Finally, and most importantly, punitive damages are a creature of statute in Montana, and the statutory scheme clearly provides punitive damages cannot be recovered in an action arising from contract as this action obviously does.

¶39 Weter contends that the District Court clearly erred because Archambaults' wrongful occupation and meritless claims in tribal, state and federal courts entitle her to damages pursuant to § 27-1-221, MCA. Weter contends that the suit in tribal court demonstrates the requisite malice for punitive damages, and that Archambaults' alleged cattle leases and wrongful occupation further demonstrated malice. On the other hand, Archambaults claim that although the case they brought in tribal court was ultimately unsuccessful, it was not maliciously brought, that they did not wrongfully occupy Weter's property, and that punitive damages are expressly prohibited in contract disputes.

¶40 We recognize that § 27-1-220, MCA, prohibits punitive damages arising from breach of contract. However, § 27-1-221, MCA, does permit an award of punitive damages where the claimant proves by clear and convincing evidence that the defendant is guilty of "actual fraud or actual malice," outside the contract context. "Actual malice" means:

the defendant has knowledge of facts or intentionally disregards facts that create a high probability of injury to the plaintiff and:
(a) deliberately proceeds to act in conscious or intentional disregard of the high probability of injury to the plaintiff; or
(b) deliberately proceeds to act with indifference to the high probability of injury to the plaintiff.

20

Section 27-1-221(2), MCA.  Weter claims that Archambaults filed malicious claims and defenses in this and other civil proceedings.  However, we agree with the District Court that there was insufficient evidence that Archambaults acted with "actual malice" towards Weter.  Nor have we been referred to any record of the tribal or federal cases.  Therefore, we conclude that the District Court was not clearly erroneous when it found that Weter was not entitled to an award of punitive damages.

¶41  For the foregoing reasons, the District Court's Order is affirmed.

/S/ TERRY N. TRIEWEILER

We Concur:

/S/ W. WILLIAM LEAPHART
/S/ JAMES C. NELSON
/S/ PATRICIA COTTER

21

Justice Jim Rice concurring in part and dissenting in part.

¶42     I concur with the Court's analyses and holdings on Issues 1, 2 and 4.  I dissent from the Court's holding on Issue 3.  I would hold that the District Court's finding that there was no evidence of wrongful occupation was clearly erroneous, given the evidence to the contrary, particularly Charles Archambault's own testimony that he had continued to reside on the property and had leased the property to Lyman Denzer, and the evidence of haying and grazing of the property by third parties allowed by Archambaults, which resulted in Weter's loss of CRP funds.

¶43   I disagree that these damages could be obtained only by filing a separate wrongful detainer action.  Archambaults were contractually liable for the "full damages allowable by law" for failing to immediately surrender peaceable possession.  Clearly, they failed to do so.  While the damages caused thereby were recoverable within an unlawful detainer action, I would hold that they were properly sought within Weter's action here, and would reverse the District Court on that issue.

                                             /S/ JIM RICE

22